DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a Scioto County Common Pleas Court judgment of conviction and sentence. The jury found appellant guilty of possession of crack cocaine in excess of 100 grams, in violation of R.C. 2925.11(A).[1]
 {¶ 2} Appellant raises the following assignments of error for review:
 {¶ 3} First Assignment of Error:
"The trial court erred in overruling defendant-appellant's motion to dismiss for lack of a speedy trial."
 {¶ 4} Second Assignment of Error:
"The trial court erred by admitting testimony that the defendant had $3000.00 in cash on his person when previously arrested for a minor misdemeanor charge."
 {¶ 5} Third Assignment of Error:
"The trial court erred in failing to give proper instructions to the jury when informed they were hopelessly deadlocked."
 {¶ 6} On May 8, 2002, the Scioto County Grand Jury returned an indictment charging appellant with possession of crack cocaine, in excess of 100 grams, in violation of "O.R.C.2925.11(A)(C)(4)(f)."
 {¶ 7} On March 6, 2003, the state filed a "substitute indictment." The indictment was identical to the original indictment, except that it contained a major drug offender specification: "The Grand Jury further finds that the said Sam Barrett * * * is a major drug offender as defined in ORC2929.01(X)."
 {¶ 8} On March 24, 2003, appellant filed a motion in limine. He requested the court to exclude evidence that he had over $3,000 in his possession when arrested on January 30, 2002 on an unrelated minor misdemeanor charge of possession of marijuana. Before the trial started, the court ruled that if appellant took the stand, the state could inquire about the $3,000 but could not mention the arrest.
 {¶ 9} On March 24, 25, and 26, 2003, the court conducted a jury trial. During the state's case-in-chief, the officer who arrested appellant on January 30, 2002 testified that appellant had over $3,000 in his possession. Appellant did not object.
 {¶ 10} After the court submitted the case to the jury, the jury advised the court that it was deadlocked. The court then stated to the jury:
"The county and the state has gone to a considerable expense to try and get this done, plus the Court's docket is extremely crowded. I inherited a very, very busy docket, and I am trying to get it caught up. And, what I am asking you to do is, it is still early in the day and we have already invested a lot of money in this trial to try to get together and consult with one another in trying to reach the same resolution. A mistrial just simply means that we would have to bring in twelve more jurors to try the case again, and I would really rather you folks go back, consult with one another, listen to each other's stories, listen to what you believe is the strong points of the case and work it around and try and get this worked out. I would hate to release you, just to have to set another jury trial. O.K. So, if you will, I understand, it's a very difficult decision. It is a very difficult case. These are the kind of decisions we as judges have to do on a daily basis, and we don't get to say I am not going to make a decision because we wouldn't keep our job if that was the case. So you guys have become the judge today. I am going to ask you to, please, consult with one another and come to a conclusion. O.K. I am going to ask you to go back to the jury [room]."
 {¶ 11} Appellant's counsel informed the court that he thought the court should tell the jury "that they do not compromise." The court then stated:
"All I am going to reiterate is to go over my jury instructions that I gave you earlier and it tells you about how to reach a conclusion and reach a decision in this case. I am not telling you to compromise your opinions solely to be congenial, but I am asking you to do, listen to each other and try to reach a conclusion in this case. Again, I as a judge accept the responsibility for making decisions on a daily basis. Now, you guys have become the judge, so try to come to a conclusion. O.K. Take them back to the jury room."
 {¶ 12} On March 26, 2003, the jury found appellant guilty. The court subsequently sentenced appellant to twenty years imprisonment. Appellant filed a timely notice of appeal.
 I {¶ 13} In his first assignment of error, appellant asserts that the trial court erred by denying his motion to dismiss. He claims that he was denied his right to a speedy trial on the major drug offender specification that the state alleged in the "substitute" indictment filed on March 6, 2003. Appellant appears to assert that the major drug offender specification constituted a new "charge." We disagree with appellant.
 {¶ 14} R.C. 2941.1410 provides:
The determination by a court that an offender is a major drug offender is precluded unless the indictment, count in the indictment, or information charging the offender specifies that the offender is a major drug offender. The specification shall be stated at the end of the body of the indictment, count, or information * * *.
 {¶ 15} In the case at bar, the original indictment did not contain the R.C. 2941.1410 specification. Thus, the state subsequently filed a new indictment that contained the specification. The specification does not constitute a new charge that implicates speedy trial concerns.
 {¶ 16} While the state's designation of the indictment as a "substitute" indictment may have been a misnomer, it is well-established that Crim.R. 7(D) permits an indictment to be amended. The rule states that a "court may at any time before, during, or after a trial amend the indictment, information, complaint, or bill of particulars, in respect to any defect, imperfection, or omission in form or substance, or of any variance with the evidence, provided no change is made in the name or identity of the crime charged." Thus, "[a]n indictment, which does not contain all the essential elements of an offense, may be amended to include the omitted element, if the name or the identity of the crime is not changed, and the accused has not been misled or prejudiced by the omission of such element from the indictment." State v. O'Brien (1987), 30 Ohio St.3d 122,508 N.E.2d 144, paragraph two of syllabus.
 {¶ 17} Appellant has not shown that he has been misled or prejudiced by the omission of the major drug specification from the original indictment. At all times, the state alleged that appellant's possession of crack cocaine was over 100 grams and, thus, fell within the provisions of R.C. 2925.11(C)(4)(f). R.C.2925.11(C)(4)(f) states, inter alia, that if the offender possesses more than one hundred grams of crack cocaine, "possession of cocaine is a felony of the first degree, [and] the offender is a major drug offender."
 {¶ 18} Accordingly, based upon the foregoing reasons, we overrule appellant's first assignment of error.
 II {¶ 19} In his second assignment of error, appellant argues that the trial court erred by permitting testimony that he possessed over $3,000 when arrested on a previous, unrelated charge.
 {¶ 20} We initially note that although appellant filed a motion in limine, when the testimony was presented at trial, appellant did object. "If counsel opposes the reception of an adverse party's evidence, he must object when the evidence is actually presented, or he may well have waived any objection to the denial of his earlier motion in limine." State v. White
(1982), 6 Ohio App.3d 1, 4, 451 N.E.2d 533. Therefore, because appellant did not object when the evidence was presented, he has not properly preserved the alleged error and we may recognize it only if it constitutes plain error. See, e.g., State v. Grubb
(1986), 28 Ohio St.3d 199, 201, 503 N.E.2d 142; State v. Krull,154 Ohio App.3d 219, 227, 2003-Ohio-4611, 796 N.E.2d 979.
 {¶ 21} Notice of plain error under Crim.R. 52(B) is to be taken with the utmost of caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice. See, e.g.,State v. Barnes (2002), 94 Ohio St.3d 21, 27, 759 N.E.2d 1240;State v. Hill (2001), 92 Ohio St.3d 191, 196, 749 N.E.2d 274. Plain error should not be invoked unless it can be said that, but for the error, the outcome of the trial would clearly have been otherwise. See, e.g., State v. Jackson (2001),92 Ohio St.3d 436, 438, 751 N.E.2d 946; State v. Sanders (2001),92 Ohio St.3d 245, 263, 750 N.E.2d 90. We do not believe that the circumstances in the case at bar merit application of the plain error doctrine.
 {¶ 22} The decision to admit or exclude relevant evidence is within the sound discretion of the trial court. State v. Bey
(1999), 85 Ohio St.3d 487, 490, 709 N.E.2d 484. Thus, the trial court's decision to admit or exclude relevant evidence cannot be reversed absent an abuse of that discretion. See, e.g., State v.Combs (1991), 62 Ohio St.3d 278, 581 N.E.2d 1071; State v.Sage (1987), 31 Ohio St.3d 173, 510 N.E.2d 343; State v.Rooker (Apr. 15, 1993), Pike App. No. 483. The term "abuse of discretion" implies more than an error of law or judgment. Rather, the term suggests that the trial court acted in an unreasonable, arbitrary, or unconscionable manner. See, e.g.,State v. Xie (1992), 62 Ohio St.3d 521, 584 N.E.2d 715; Statev. Montgomery (1991), 61 Ohio St.3d 410, 575 N.E.2d 167. Furthermore, when applying the abuse of discretion standard, a reviewing court is not free to merely substitute its judgment for that of the trial court. In re Jane Doe 1 (1991),57 Ohio St.3d 135, 566 N.E.2d 1181 (citing Berk v. Matthews [1990], 53 Ohio St.3d 161, 359 N.E.2d 1301).
 {¶ 23} In the case at bar, we are unwilling to conclude that the testimony that appellant possessed over $3,000 when arrested on a prior unrelated offense was so clearly unreasonable as to amount to plain error. We do not find it likely that but for the admission of the evidence, the outcome of the trial would have been different. Ample evidence exists that appellant possessed over 100 grams of crack cocaine.
 {¶ 24} Accordingly, based upon the foregoing reasons, we overrule appellant's second assignment of error.
 III {¶ 25} In his third assignment of error, appellant asserts that the trial court failed to properly instruct the jury when the jury advised the court that it was deadlocked. Appellant complains that the court failed to use the language approved inState v. Howard (1989), 42 Ohio St.3d 18, 537 N.E.2d 188.
 {¶ 26} We initially note that appellant did not object to the court's jury instruction. The failure to object to a jury instruction waives any claim of error relative to that instruction unless, but for the error, the outcome of the trial clearly would have been otherwise. See, e.g., State v. Nolling
(2002), 98 Ohio St.3d 44, 781 N.E.2d 88.
 {¶ 27} The Ohio Supreme Court, in State v. Howard (1989),42 Ohio St.3d 18, 537 N.E.2d 188, approved a supplemental charge to be given to juries that have become deadlocked on the question of conviction or acquittal. The Howard charge states:
"The principal mode, provided by our Constitution and laws, for deciding questions of fact in criminal cases, is by jury verdict. In a large proportion of cases, absolute certainty cannot be attained or expected. Although the verdict must reflect the verdict of each individual juror and not mere acquiescence in the conclusion of your fellows, each question submitted to you should be examined with proper regard and deference to the opinions of others. You should consider it desirable that the case be decided. You are selected in the same manner, and from the same source, as any future jury would be. There is no reason to believe the case will ever be submitted to a jury more capable, impartial, or intelligent than this one. Likewise, there is no reason to believe that more or clearer evidence will be produced by either side. It is your duty to decide the case, if you can conscientiously do so. You should listen to one another's arguments with a disposition to be persuaded. Do not hesitate to reexamine your views and change your position if you are convinced it is erroneous. If there is disagreement, all jurors should reexamine their positions, given that a unanimous verdict has not been reached. Jurors for acquittal should consider whether their doubt is reasonable, considering that it is not shared by others, equally honest, who have heard the same evidence, with the same desire to arrive at the truth, and under the same oath. Likewise, jurors for conviction should ask themselves whether they might not reasonably doubt the correctness of a judgment not concurred in by all other jurors."
 {¶ 28} The question before the Howard court was whether to adopt the "dynamite" charge approved by the United States Supreme Court in Allen v. United States (1896), 164 U.S. 492,17 S.Ct. 154, 41 L.Ed. 528, for use with a deadlocked jury. After a review of decisions from other jurisdictions which have abandoned the "dynamite" charge, as well as a review of critical scholarly articles, the Ohio Supreme Court rejected the "dynamite" charge for Ohio. The court's decision turned on two primary criticisms of Allen. First, the court noted that the Allen charge had a potentially coercive impact because it advised the jury "that a decision must be reached, thereby depriving either the state or the defendant of the possibility of a hung jury and a mistrial."Howard, at 22. The court also expressed concern that theAllen charge is unduly coercive to jurors in the minority "because it, in effect, orders those members to reevaluate their position in light of the fact that fellow jurors are unswayed, but does not require jurors in the majority to undertake a corresponding reevaluation." Id. Thus, the effect of the Allen
charge was to place the authority of the trial judge behind the position of the majority and give the appearance that a jury verdict should be one of majority rule rather than unanimity.[2] Id.
 {¶ 29} We readily acknowledge that the better practice is to give the precise Howard instruction as approved by the Ohio Supreme Court. See State v. Lopez (1993), 90 Ohio App.3d 566,582, 630 N.E.2d 32; State v. Willis (Jul. 29, 1996), Stark App. No. 95CA202. However, as aptly noted by the Eighth District Court of Appeals, the Howard charge is not an absolute mandate for trial courts to follow, but rather a suggestion. State v.Williams (Jul. 5, 1995), Cuyahoga App. No. 66864. If a court deviates from the Howard language, the court must ensure that the charge satisfies the concerns of the Howard opinion. In particular, a court must ensure that the instruction (1) encourages a unanimous verdict only when one can conscientiously be reached, leaving open the possibility of a hung jury and resulting mistrial, and (2) calls for all jurors to reevaluate their opinions, not just the minority members. Id.; also seeState v. Matyas, Jefferson App. No. 98-JE-14, 2000-Ohio-2671;State v. McClendon (Jan. 20, 1998), Stark App. No. 97CA71;State v. Dixon (Mar. 13, 1997), Cuyahoga App. No. 68338.
 {¶ 30} After a thorough review of the trial court's jury instructions in this case, we conclude that the court's charge complied with the dual concerns expressed in the Howard charge. The court encouraged the jurors to reach a unanimous verdict and left open the possibility that a unanimous verdict could not be reached. The court also instructed the jury to "listen to each other and try to reach a conclusion" and that "[a] mistrial just simply means that we would have to bring in twelve more jurors to try the case again." The court's instruction did not single out the jurors in the minority, but rather asked all jurors to consult with each other.
 {¶ 31} Although the trial court's instruction is not model and does not strongly emphasize the possibility that the jurors would be unable to unanimously agree on a verdict, we believe that the instruction adequately addressed the Howard concerns. The court did not instruct the jury to reach a verdict at any cost. Instead, the court stressed the importance and desirability of reaching a verdict and that if the court were to declare a mistrial due to the jury's inability to reach a verdict, twelve other jurors would not be any better suited to reach a verdict.
 {¶ 32} Accordingly, based upon the foregoing reasons, we overrule appellant's third assignment of error and affirm the trial court's judgment.
Judgment Affirmed.
Kline, P.J., concurs in judgment and opinion as to Assignments of Error I and II; dissents as to Assignment of Error III
Harsha, J., concurs in judgment and opinion with opinion.
[1] R.C. 2925.11(A) provides: "No person shall knowingly obtain, possess, or use a controlled substance."
[2] The text of the jury instruction that the trial court used in Howard, and which the Ohio Supreme Court disapproved, is as follows:
"THE COURT: You have transmitted to the Court, ladies and gentlemen, a statement; that after lengthy [sic] discussion, you cannot reach a unanimous verdict on the charge of aggravated murder, and you asked me for further instructions. Everybody associated with this case realizes that it's a most difficult, indeed, matter to decide.
Now the only method that is provided by our Constitution and our Laws, ladies and gentlemen, for deciding questions of fact is by a verdict of a jury. And in a large proportion of cases and strictly speaking in all cases, absolute certainty cannot be obtained or even expected. Although the verdict to which a juror agrees must be, of course, his own verdict, the result of his own convictions and not a mere acquiescence in the conclusion of his fellows; yet, in order to bring 12 minds to a unanimous verdict you must examine the question submitted to you with candor and with a proper regard in defference [sic] to the opinions of each other. If you should fail to agree upon a verdict, the case is left open and undecided. Like all cases, this case must be disposed of sometime. You, ladies and gentlemen, were selected in the same manner and from the same source from which any future jury must be, and there is no reason to suppose that the case will ever be submitted to 12 more men and women who are more intelligent, more impartial or more competent to dispose of it, or that more or clearer evidence will be produced on one side or the other. You have heard the evidence. Now with this *20 view, it is your duty, ladies and gentlemen, to dispose of the case if you can consciously [sic] do so. In order to make a decision more practicable, the law imposes the burden of proof on one party or the other. In all cases that is true. Now in this case the burden is upon the State to establish every part of every essential element, of which you are well aware, beyond a reasonable doubt. Now if you are left in doubt, ladies and gentlemen, as to any essential element, the defendant is entitled to the benefit of that doubt. But in conferring together, ladies and gentlemen, you ought to pay proper respect to each other's [sic] opinions; you must listen with a disposition to be convinced by each others' arguments. And on the one hand, if much the larger number of your panel are on one side or the other, a dissenting juror should consider whether his position is a reasonable one when it makes no impression upon the minds of men and women equally honest, equally intelligent and who have heard the same evidence with the same attention, with an equal desire to arrive at the truth and under the sanction of the same oath. And on the other hand, if a majority have reached a verdict, the minority ought seriously ask themselves whether or not they may reasonably and ought not to doubt the correctness of the judgment which is not concurred in with most of those with whom they are associated and/or distrust the weight or sufficiency of that evidence which fails to convince the minds of their fellows.
Now with these instructions in mind, ladies and gentlemen, you will please return to your deliberation room and continue your deliberations."
Howard, 42 Ohio St.3d at 19-20.