[Cite as *State v. Stephenson*, 2013-Ohio-771.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ADAMS COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | : | |
| Plaintiff-Appellee, | : | Case No. 12CA936 |
| | : | |
| vs. | : | |
| | : | DECISION AND JUDGMENT |
| ELMER E. STEPHENSON, | : | ENTRY |
| | : | |
| Defendant-Appellant. | : | **Released: 02/26/13** |

_____

APPEARANCES:

Timothy Young, Ohio State Public Defender, and Valerie Kunze, Assistant State Public Defender, Columbus, Ohio, for Appellant.

C. David Kelley, Adams County Prosecutor, and Kris D. Blanton, Assistant Adams County Prosecutor, West Union, Ohio, for Appellee.

_____

McFarland, P.J.

{¶1} Appellant, Elmer Stephenson, appeals the judgment of the Adams County Court of Common Pleas. Appellant was convicted of gross sexual imposition, in violation of R.C. 2907.05(A)(1), a fourth degree felony. Appellant contends the trial court erred by: (1) deviating from the language of the *Howard* charge when it gave the instruction to the deadlocked jury; and, (2) by providing a definition of "knowingly" that did not comport with Ohio law. Upon review, we find no plain error occurred when the trial court modified the language of the *Howard* charge it gave to

the jury and further, no plain error occurred by the trial court's inclusion of the definition of "knowingly" in the jury instructions. As such, we overrule both assignments of error and affirm the judgment of the trial court.

FACTS

{¶2} On July 7, 2011, Appellant Elmer Stephenson was indicted by the Adams County Grand Jury on two counts of gross sexual imposition and one count of kidnapping, based on allegations made by Chasity Morrison. At the time of the alleged incident, Appellant was 68 years old and used oxygen. Ms. Morrison was his home health care aide, age 26. She assisted Appellant by cleaning and running errands.

{¶3} The indictment stemmed from an incident Ms. Morrison reported to the West Union Police. Morrison alleged in early 2011, while she was doing dishes at the kitchen sink in Appellant's home, he came up behind her and put his hands inside her clothes. The State of Ohio presented three witnesses: Sgt. Don Adams of the Adams County Sheriff's Department, Kenneth Dick, an investigator with the Adams County Prosecutor's Office, and Ms. Morrison. Ms. Morrison testified that when he put his hands inside her clothes, he touched her "right beside her vagina," and also "underneath her bra line." She further testified she "tried to leave" but was successful only when Appellant "just stopped." Appellant declined to testify at trial.

{¶4} The jury began deliberating at 3:00 p.m. on the second day of trial. At 3:40 p.m., the jury inquired: "Why are there two sexual imposition charges? And then it's got one for the charge of sexual contact of the pubic region? One for the charge of sexual contact of the breast region? Clarification please." All parties agreed to the court's written response, which was "Yes." At 5:51 p.m., the jury inquired "What happens if all 12 jurors cannot come to agreement on all three counts?" The court brought the jury back to the courtroom and engaged in dialogue with them about their inability to reach a unanimous decision and possible recess for the day. The jury returned to deliberations.

{¶5} At 8:00 p.m., the jury submitted a note indicating that they were unable to reach a unanimous verdict and believed "as a whole that a unanimous decision will not be made at any time." The court then issued a *Howard* charge and released the jury. The jury returned the next day at 10:00 a.m. and the court gave them a second *Howard* charge with additional instructions. At 2:30 p.m., the jury returned a verdict of guilty on count one, gross sexual imposition, and not guilty on the remaining counts. This appeal followed.

ASSIGNMENTS OF ERROR

I.      "THE TRIAL COURT ERRED IN ITS DEVIATION FROM THE
        HOWARD CHARGE WHEN IT GAVE INSTRUCTION TO THE

DEADLOCKED JURY AND THEREBY DEPRIVED MR. STEPHENSON OF HIS RIGHT TO A FAIR TRIAL BEFORE A PROPERLY INSTRUCTED JURY, AND OF HIS RIGHT TO DUE PROCESS OF LAW, AS GUARANTEED BY THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND BY SECTIONS 10 AND 16 OF THE OHIO CONSTITUTION."

II.     "THE TRIAL COURT ERRED IN ITS INSTRUCTIONS TO THE JURY BY INEXPLICABLY PROVIDING THE DEFINITION OF KNOWINGLY, AND THEREBY DEPRIVED MR. STEPHENSON OF HIS RIGHT TO A FAIR TRIAL BEFORE A PROBPERLY INSTRUCTED JURY, AND OF HIS RIGHT TO DUE PROCESS OF LAW, AS GUARANTEED BY THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND SECTIONS 10 AND 16, ARTICLE I OF THE OHIO CONSTITUTION."

LEGAL ANALYSIS

The Howard Charge

{¶6} In his first assignment of error, Appellant contends that the trial court erred in its deviation from the *Howard* charge when it failed to use, verbatim, the language approved in *State v. Howard,* 42 Ohio St. 3d 18, 537 N.E.2d 188 (1989).  In support of his argument, Appellant cites *State v. Andricks,* 111 Ohio App.3d 93, 675 N.E.2d 872 (3rd. Dist. 1996).  In *Andricks,* the appellate court held that the cumulative effect of errors in the giving of an altered *Howard* instruction could not help but confuse and mislead the jury.  Thus, the discrepancies in language rose to the level of plain error.  The appellate court further held that there would seem to be no

good reason for the trial court to deviate from the verbatim syllabus language provided in *Howard.*

{¶7} Here, similar to the circumstances in *Andricks,* the transcript reveals that Appellant did not object to the court's altered *Howard* instruction when it was given at the end of the second day of trial, although he was twice given the opportunity on that date to do so. The transcript also reveals that Appellant did not object to the giving of the altered *Howard* charge when he was given yet a third opportunity to do so on the morning of the third day of trial. The failure to object to a jury instruction waives any claim of error relative to that instruction, unless, but for the error, the outcome of the trial clearly would have been otherwise. *State v. Barrett,* 4th Dist. No. 03CA2889, 2004-Ohio-2064, 2004 WL 878002, ¶21. See, e.g., *State v. Nolling,* 98 Ohio St.3d 44, 781 N.E.2d 88 (2002).

{¶8} Notice of plain error under Crim.R.52 (B) is to be taken with the utmost of caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice. *Barrett,* ¶21. See, e.g. *State v. Barnes,* 94 Ohio St. 3d 21, 27 759 N.E.2d 1240 (2002); *State v. Hill,* 92 Ohio St.3d 191, 196, 749 N.E. 2d 274 (2001). Plain error should not be invoked unless it can be said that, but for the error, the outcome of the trial would clearly have been otherwise. See, e.g., *State v. Jackson,* 92 Ohio St.3d 436, 438, 751

N.E.2d 946 (2001); *State v. Sanders*, 92 Ohio St.3d 245, 750 N.E.2d 90 (2001).  However, unlike the appellate court in *Andricks,* we do not believe that the circumstances in the case at bar merit a finding of plain error.

{¶9} In *State v. Howard,* the Supreme Court of Ohio approved the following supplemental instruction for those cases in which a jury indicates to the trial judge that they are unable to reach a unanimous verdict and are considered to be deadlocked:

> "The principal mode, provided by our Constitution and laws, for deciding questions of fact in criminal cases, is by jury verdict.  In a large proportion of cases, absolute certainty cannot be attained or expected.  Although the verdict must reflect the verdict of each individual juror and not mere acquiescence in the conclusion of your fellows, each questions submitted to you should be examined with proper regard and deference to the opinions of others.  You should consider it desirable that the case be decided.  You are selected in the same manner, and from the same source, as any future jury would be. There is no reason to believe the case will ever be submitted to a jury more capable, impartial, or intelligent than this one.  Likewise, there is no reason to believe that more or clearer evidence will be produced by either side.  It is your duty to decide the case, if you can conscientiously do so.  You should listen to one another's arguments with a disposition to be persuaded.  Do not hesitate to reexamine your views and change your position if you are convinced it is erroneous. If there is disagreement, all * * *jurors should reexamine their positions, given that a unanimous verdict has not been reached.  Jurors for acquittal should consider whether their doubt is reasonable, considering that it is not shared by others, equally honest, who have heard the same evidence, with the same desire to arrive at the truth, and under the same oath.  Likewise, jurors for conviction should ask themselves whether they might not reasonably doubt the correctness of a judgment not concurred in by all other jurors."

{¶10} We have readily acknowledged that the better practice is to give the precise *Howard* instruction as approved by the Supreme Court of Ohio. *Barrett*, ¶29.  See, e.g., *State v. Lopez*, 90 Ohio App.3d 566, 582, 630 N.E.2d 32 (1993). See, e.g., *State v. Clifton*, 172 Ohio App.3d 286, 2007-Ohio-3392, 872 N.E.2d 1310, ¶31.   However, as aptly noted by the Eighth District Court of Appeals, the *Howard* charge is not an absolute mandate for trial courts to follow, but rather a suggestion. *Id.* See, e.g., *State v. Williams*, 8th Dist. No. 66864, 1995 WL 396369 (Jul.5, 1995).  If a court deviates from the *Howard* language, the court must ensure that the charge satisfies the concerns of the *Howard* opinion. *Barrett, ¶*29. In particular, a court must ensure that the instruction (1) encourages a unanimous verdict only when one can conscientiously be reached, leaving open the possibility of a hung jury and resulting mistrial, and (2) calls for all jurors to reevaluate their opinions, not just the minority members.  *Id*; also see *State v. Matyas*, 7th Dist. No. 98-JE-14, 2000-Ohio-267, 2001 WL 1808575 (Dec. 6, 2000).

{¶11} Appellant takes issue with the modified language of the *Howard* charge at several places in the transcript.  We will compare the passages with which Appellant takes issue,[1] keeping in mind the two principle concerns of the Howard opinion.

---

[1] To clearly illustrate the differences between the verbatim *Howard* language and the altered *Howard* charge given to the jury in these proceedings, the variations in word choice have been italicized.

(1) The precise *Howard* charge begins:

> The principal mode, provided by our Constitution and laws, for deciding questions of fact in criminal cases, is by jury verdict.

By contrast, the trial court here stated:

> *Now, returning to that which we commenced with this trial before you were actually sworn in. Those who participate in a trial must do so in accordance with established rules. That is true of the witnesses, the lawyers, and the Judge. Ladies and gentlemen of the jury, this is not particularly unusual your concern with inability to reach a unanimous verdict. But, there is precedence as to how a court and or counsel must address these instances, and that is the next aspect of this.*

{¶12} While we agree the trial court exchanged the standard introductory sentence for a generalized statement about duties and established rules,  we do not necessarily agree that the difference in language could only be interpreted by the jury as meaning that a jury verdict was being required of them. Individual jurors may well have interpreted the court's language about "established rules" as hearkening back to previous admonitions they had been given throughout the proceedings.  For example, during the trial, the judge had reminded the jurors that they were not to discuss the case with family or friends, not to express opinions, not to read the local newspaper, not to consider opening statements as evidence, and not to expect they would be allowed to keep their cell phones during deliberations.  We conclude that this aspect of the altered *Howard* charge did

not cause confusion such that it foreclosed the possibility of a hung jury or

place undue pressure on minority members of the jury.

    2) On the deliberative process and interaction among jurors, the

*Howard* charge reads:

> In a large proportion of cases, absolute certainty cannot be attained or expected. Although the verdict must reflect the verdict of each individual juror and not mere *acquiescence* in the conclusion of *your fellows,* each question submitted to you should be examined with proper regard and deference to the opinions of others. You should consider it desirable that the case be decided. You are selected in the same manner and from the same source, as any future jury would be. There is no reason to believe the case will ever be submitted to a jury more capable, impartial, or intelligent than this one. Likewise, there is no reason to believe that more or clearer evidence will be produced by either side. It is your duty to decide the case, if you can *conscientiously* do so. You should listen to one another's arguments with a disposition to be persuaded. Do not hesitate to reexamine your views and change your position if you are convinced it is erroneous. *If there is disagreement*, all jurors should reexamine their positions, *given that a unanimous verdict has not been reached.*

By contrast, the trial court here stated:

> In a large proportion of cases, absolute certainty cannot be attained or expected. Although the verdict must reflect the verdict of each individual juror and not mere *consent* to the conclusion of other jurors, each question submitted to you should be examined with proper regard and deference to the opinions of *other jurors.* You should consider it desirable that the case be decided. You were selected in the same manner and from the same source as any future jury would be. There is no reason for this Court to believe that the case will ever be submitted to a jury more capable, impartial, or intelligent than this one. Likewise, there is no reason to believe that more or clear evidence will be produced by either side. It is your duty to decide this case if you can *honestly* do so. You should listen to one another's arguments with a disposition to be persuaded. Do not

hesitate to reexamine your views and change your position if you are convinced that it is *wrong. As there is disagreement,* all jurors should reexamine their positions, *given that a verdict has not been reached.*

**{¶13}** Appellant argues that the word and phrasal choices utilized by the trial court in place of verbatim *Howard* language issued a stronger directive implying that the jury "must reach a verdict." We disagree. We do not find that the words and phrases substituted by the trial judge varied significantly from the verbatim *Howard* language. [2] We also do not find that the substituted word choices or omission of the word "unanimous" in the phrase "given that a verdict has not been reached," created a coercive effect on the jury. After review, we conclude that the language utilized by the trial judge complied with *Howard.*

3) Regarding specific instructions addressed to jurors for acquittal and jurors for conviction, the *Howard* charge states:

Jurors for *acquittal* should consider *whether their doubt is reasonable,* considering that it is not shared by others, equally honest, who have heard the same evidence, with the same desire to arrive at the truth, and under the same oath. Likewise, jurors *for conviction*

---

[2] For example, the trial court substituted "consent," "other jurors," "honestly," and "wrong" for the words "acquiescence, " "your fellows," "conscientiously," and "erroneous." According to Merriam Webster's Online Dictionary, http://www.meriam-webster.com/dictionary (accessed August 28, 2012), "consent" is a synonym for "acquiescence." "Honest" is a synonym for "conscientious," and "wrong" is a synonym for "erroneous." Also, according to the online source, "fellow" is defined as "a member of a group having common characteristics, "i.e. "other jurors."

should ask themselves *whether they might not reasonably doubt the correctness of a judgment not concurred in by all other jurors.* By contrast, the trial court here substituted language as follows:

> Jurors *more in favor of plaintiff* should *consider whether their position is correct,* considering that it is not shared by others equally honest who have heard the same evidence with the same desire to arrive at the truth and under the same oath. Likewise, jurors *more in favor of defendant* should ask themselves *whether their position is correct considering that it is not shared by other jurors.*

{¶14} Appellant argues that the altered language shifted the jury's discussion from determining whether he was guilty beyond a reasonable doubt to a discussion of which "side" was correct- plaintiff or defendant. Although it is preferable to have left the language as to "reasonable doubt" in the charge, we disagree that the trial court's substitution in wording went as far as to shift or eradicate the burden on the State to provide evidence beyond a reasonable doubt on each element of each charge. The trial court properly instructed the jury prior to their retiring for deliberations. Specifically, the court instructed that Appellant was presumed innocent until his guilt was established beyond a reasonable doubt. The trial court instructed that the State must produce evidence beyond a reasonable doubt

as to every essential element of the offenses charged.   The trial judge further instructed that reasonable doubt is not mere possible doubt. The substance of the section of which Appellant complains, despite changing the language to "more in favor of plaintiff" and "more in favor of defendant," continues  to focus on the fact that all jurors, those for acquittal and those for conviction, should reconsider their positions.  Again, the trial court's changes in language did not place undue pressure or coercion on the minority jurors but asked all jurors to reconsider their positions.

{¶15} Finally, Appellant argues that the trial court, after issuing the *Howard* charge a second time, added a further instruction over defense's objection, as follows:

> "Your initial conduct upon re-entering the jury room is a matter of importance.  It is not wise to immediately express a determination to insist upon a certain verdict because if your sense of pride is aroused you may hesitate to change your position even if you later decide that you are wrong.  Consult with one another, consider each other's views and deliberate with the objective of reaching an agreement if you can do so without disturbing your individual judgment.  Do not hesitate to change an opinion if convinced that it is wrong.  However, you should not surrender honest opinions in order to be congenial or to reach a verdict solely because of the opinion of your fellow jurors."

{¶16} The essence of counsel's objection was: (1) that the jury had not requested further instruction and actually had the written instructions with them to refer to if necessary; (2) that the instruction was not appropriate; and, (3) that some of the language was similar to that in the

*Howard* charge and could be viewed as an attempt to persuade them to a verdict one way or another. We are not persuaded that giving this standard Ohio instruction a second time, OJI 207.33, regarding initial conduct upon entering the jury room, was error or coerced a verdict. Albeit, repetitive, this instruction encourages jurors to consult with each other and consider each other's views. Moreover, this instruction advised jurors not to surrender their honest convictions in order to "get along" with the other jurors or reach a verdict "solely" because of their opinions.

{¶17} In summary, we do not find that the trial court's modified *Howard* charge or the further charge, OJI 207.33, complained of by Appellant, "coerced" a unanimous verdict or created a coercive environment for the minority jurors. We believe that although the *Howard* instruction given here was not verbatim, it was adequate. OJI 207.33 was perhaps superfluous, but not erroneous. Having found the trial court did not commit plain error, we overrule Appellant's first assignment of error and affirm the judgment of the trial court.

The Trial Court's Inclusion of the Definition of "Knowingly"

{¶18} Appellant was convicted of R.C. 2905.05(A)(1), gross sexual imposition, which reads as follows:

 (A) No personal shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual

contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies:

(1)  The offender purposely compels the other person, or one of the other

persons, to submit by force or threat of force.

{¶19} Appellant also contends that the trial court committed plain

error by improperly instructing the jury on the definition of "knowingly."

Appellant asserts this was inherently confusing because there was no clear

reason presented to the jury for the definition being provided. The trial court

gave the following instructions:

The term purpose.  A person acts purposely when it is his or her specific intention to cause a certain result or when the gist of the offense is a prohibition against conduct of a certain nature regardless of what the offender intends to accomplish thereby it is his specific intention to engage in conduct of that nature.

Knowingly, a person acts knowingly regardless of his or her purpose when he or she is aware that his or her conduct will probably cause a certain result, or he or she is aware that his conduct will probably be of a certain nature.  A person has knowledge of circumstances when he is aware that such circumstances probably exist.  Since you cannot look into the mind of another, knowledge is determined from all the facts and circumstances in evidence.

{¶20} "A criminal defendant has the right to expect that the trial court

will give complete jury instructions on all issues raised by the evidence."

*State v. Maine,* 4th Dist. No. 04CA46, 2005 Ohio-3742, ¶11 (internal

citation omitted), citing  *State v. Willingford*, 49 Ohio St.3d 247, 251, 551

N.E.2d 1279 (1990).  When we review a trial court's jury instructions, we

may not judge "'a single instruction to a jury* * *in artificial isolation," but we must view it "'in the context of the overall charge." 'State v. Madrigal, 87 Ohio St. 3d 378, 396, 721 N.E.2d 52 (quoting Cupp v. Naughten, 414 U.S. 141, 94 S. Ct. 396, 400 (1973). Thus, we must consider the jury instructions "as a whole" and then determine whether the jury charge probably misled the jury in a manner materially affecting the complaining party's substantial rights. See Becker v. Lake Cty. Mem. Hosp. West, 53 Ohio St. 3d 202, 208, 560 N.E. 2d 165 (1990).

{¶21} As the court explained in State v. Hardy, 28 Ohio St. 2d 89, 92, 276 N.E.2d 247 (1971): "In determining the question of prejudicial error in instructions to the jury, the charge must be taken as a whole, and the portion that is claimed to be erroneous or incomplete must be considered in relation to, and as it affects and is affected by the other parts of the charge. If from the entire charge it appears that a correct statement of the law was given in such a manner that the jury could not have been misled, no prejudicial error results."

{¶22} We must not reverse a conviction due to error in the jury instructions unless the error is so prejudicial that it may induce an erroneous verdict. Maine ¶11. See Parma Heights v. Jaros, 69 Ohio App.3d 623, 630 591 N.E.2d 726 (1990).

{¶23} The transcript reveals at the conclusion of trial, the trial court discussed modifications to the proposed jury instructions with the prosecutor and defense counsel. Defense counsel declined to voice any objection whatsoever to the inclusion of "knowingly" in the jury instructions. Thus, again, we review the trial court's jury instructions under the plain error standard.

{¶24} The elements of the crime of which Appellant was convicted do not include the term "knowingly." "Knowingly" was defined for the jury, pursuant to OJI 417.11and R.C. 2901.22(B). While inclusion of the definition of "knowingly" may have been perceived odd or inexplicable to the jury, we remain mindful that reviewing courts must consider jury instructions in their entirety. *State v. Delawder,* 4th Dist. No. 10CA3344, 2012-Ohio-1923, at¶30. We are not convinced that the jury's question "Why are there two sexual imposition charges" is necessarily indicative of confusion relating to the definition of "knowingly."

{¶25} A similar argument was made in *State v. DePompei,* 8th Dist. No. 4638, 1984 WL 7191 (Feb.16, 1984), where Appellant was convicted on four counts of trafficking in drugs and twenty-seven counts of illegally processing drug prescriptions. One of the assigned errors on appeal was that the trial court instructed the jury on the definitions of "knowingly" and

"purposely" and the jury was misled into convicting Appellant for having the less culpable mental state (knowingly) than that which was required (intentionally). The appellate court disagreed, finding that the jury was clearly instructed that, before it could find Appellant guilty, it must find that the appellant "did intentionally make, utter or sell a false or forged prescription."

{¶26} The transcript shows that "purposely" was defined to the jury, using standard Ohio jury instructions. [3] The other definitions provided to the jury, such as the "burden of proof," "reasonable doubt," "evidence," and "credibility" were also standard Ohio instructions.[4] Specifically, as to the elements of the crimes charged, the jury was instructed:

> The defendant is charged in count one with gross sexual imposition. Before you can find the defendant, Elmer E. Stephenson, guilty of gross sexual imposition you must find beyond a reasonable doubt that on or about May 21st, 2011 in Adams County, Ohio, that Elmer E. Stephenson did have sexual contact with Chasity Morrison, not the spouse of the said Elmer E. Stephenson, or cause Chasity Morrison, not the spouse of the said Elmer E. Stephenson to have sexual contact with the same Elmer E. Stephenson. The said Elmer E. Stephenson having *purposely* (emphasis added) compelled Chasity Morrison to submit by force or threat of force.

---

[3] "Purposely" was defined for the jury, pursuant to OJI R.C. 417.01 and R.C. 2901.22(A).

[4] "Burden of proof" was defined for the jury pursuant to OJI 405.05 and R.C. 2901.05(A). "Reasonable doubt" was defined pursuant to OJI 405.07 and R.C. 2901.05(D). "Evidence" was defined pursuant to OJI 409.01, for direct and circumstantial evidence. "Credibility" was defined pursuant to OJI 409.05 and R.C. 2945.11.

{¶27} The jury was instructed by verbatim language as to count two of the indictment.  Regarding count three, kidnapping, the trial court instructed:

> The defendant is charged in count three with kidnapping. Before you can find the defendant Elmer E. Stephenson, guilty of kidnapping in violation of 2905.01(A)(4) you must find beyond a reasonable doubt that on or about May 21st, 2011 in Adams County, Ohio that Elmer E. Stephenson did by force, threat, or deception remove Chasity Morrison from the place where the other person was found or restrain the liberty of Chasity Morrison with *purpose* (emphasis added)  to engage in sexual activity as defined in Section 2907.01 of the Revised Code with the said Chasity Morrison against the victim's will.

{¶28} The jury's confusion as to "why are there two sexual imposition charges" could just as well relate to the fact that the two charges stemmed from an incident which occurred on one date in early 2011. When reviewing the complete jury instructions, although inclusion of the definition of "knowingly" was unnecessary, it is clear that the trial court provided the jury with adequate instructions. "Ordinarily, reversible error does not consist of misstatements or ambiguities in only part of the instructions." *Delawder* at¶30, citing *State v. Pettit*, 4th Dist. No. 99CA429, 2000 WL 897993, (July 5, 2000), at ¶4.

{¶29} In the context of review of the entire set of instructions given to the jury, we do not believe the jury was misled or that prejudice occurred. While Appellant argues the only evidence of sexual contact was from Ms.

Morrison and thus, he was not convicted by an "overwhelming" amount of evidence, we note that the jury was in the best position to assess Ms. Morrison's credibility. *Noling,* ¶ 54.  See *State v. DeHass,* 10 Ohio St. 2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus.  Also, the State provided two additional witnesses.  We conclude no plain error occurred by provision of the instruction "knowingly."  As such, we affirm the judgment of the trial court and overrule Appellant's second assignment of error.

**JUDGMENT AFFIRMED.**

# JUDGMENT ENTRY

It is ordered that the JUDGMENT BE AFFIRMED.  Costs herein are assessed to Appellant.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Adams County Common Pleas Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Exceptions.

Harsha, J. & Abele, J.:  Concur in Judgment and Opinion.

For the Court,

BY: _____
Matthew W. McFarland
Presiding Judge

### NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**