[Cite as *State v. Gierhart*, 2014-Ohio-1419.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
HOCKING COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | |
| | | Case No. 13CA17 |
| v. | : | |
| | | <u>DECISION AND</u> |
| MICHAEL D. GIERHART II, | : | <u>JUDGMENT ENTRY</u> |
| Defendant-Appellant. | : | RELEASED 03/31/2014 |

<u>APPEARANCES:</u>

Timothy P. Gleeson, Gleeson Law Office, Logan, Ohio, for Appellant.

Laina Fetherolf, Hocking County Prosecuting Attorney, Logan, Ohio, for Appellee.

Hoover, J.

{¶ 1} Defendant-appellant, Michael D. Gierhart, II, appeals his conviction in the Hocking County Common Pleas Court for the Illegal Manufacture of Drugs, a second-degree felony in violation of R.C. 2925.04. Gierhart argues that the trial court improperly instructed the jury with regard to the legal definition of "manufacture", which is an essential element of the offense of Illegal Manufacture of Drugs. Specifically, Gierhart argues that the trial court replaced the word "process" with "possess" which in turn directed that the jury find him guilty of the offense. Gierhart also argues that he received ineffective assistance from counsel because his trial counsel did not object to the jury instruction. Upon review, we find that no plain error occurred as a result of the trial court's mistaken substitution of the word "possess" for "process" in the instruction given to the jury. Moreover, Gierhart was not prejudiced by his trial counsel's failure to object to the instruction. Accordingly, we affirm the judgment of the trial court.

{¶ 2} On January 16, 2013, law enforcement officers from the Hocking County Sherriff's Office traveled to Gierhart's residential trailer in Perry Township, Hocking County, Ohio. The officers had reason to believe that another individual, wanted for a warrant issued from a neighboring county, would be present at the residence. After initially stating that the individual was not present, Gierhart eventually permitted the officers to enter the trailer. While inside the trailer, the officers observed items in plain view that they believed to be commonly used in the manufacture of methamphetamines. Based upon these observations, Detective Caleb Moritz[1] left the trailer to obtain a search warrant while other officers maintained the scene. Upon obtaining the warrant, officers from the Fairfield-Hocking Major Crimes Unit ("FHMCU") executed a search of the residence.

{¶ 3} On March 22, 2013, the Hocking County Grand Jury issued an indictment against Gierhart. The indictment charged Gierhart with the Illegal Manufacture of Drugs in violation of R.C. 2925.04(A), a second-degree felony; the Illegal Assembly or Possession of Chemicals for the Manufacture of Drugs in violation of R.C. 2925.041(A), a third-degree felony; and Possessing Criminal Tools in violation of R.C. 2923.24(A), a fifth-degree felony. At his arraignment, Gierhart pled not guilty to all counts and he was appointed counsel. Gierhart also filed a pre-trial motion to suppress, challenging the officers' initial entry into the residence (the entry prior to obtaining the search warrant). After an evidentiary hearing, the trial court denied the motion to suppress finding that Gierhart gave the officers consent to enter his home.

---

[1] Detective Moritz is an employee of the Hocking County Sheriff's Office.  At the time of the incident, Detective Moritz was assigned to the Fairfield-Hocking Major Crimes Unit, which is a joint narcotics task force comprised of law enforcement officers from various agencies.

{¶ 4} The case ultimately proceeded to jury trial. At trial, Detective Moritz and Detective Scott Jones[2] testified that empty lithium battery casings were found during the search of the residence. The detectives explained that in their experience, there would be no reason to cut the casings on a battery except to extract lithium for the one-pot/shake-n-bake method of methamphetamine production.

{¶ 5} Detective Moritz, Detective Jones, and Detective Charles Sims[3] all testified that a blender containing visible powder residue was present in the kitchen of the trailer. Detective Moritz explained that based on his experience he believed that the powder residue had been derived from crushing pseudoephedrine pills, which is a common process in the production of methamphetamine. Empty blister packs of pseudoephedrine pills were also found in the trailer.

{¶ 6} All three detectives also testified that several "HCL acid gas generators" were located at the residence. An HCL acid gas generator is a device created by combining a common plastic bottle, such as a soda or water bottle, with plastic tubing. Detective Sims explained that the devices are used to "salt out" solid methamphetamine from liquid methamphetamine. Detective Jones testified that he has never seen a HCL acid gas generator be used for anything other than the production of methamphetamine.

{¶ 7} Tubing from a HCL acid gas generator was found inside the residence. Detective Sims testified that a sample of the tubing was submitted to the Ohio Bureau of Criminal Identification and Investigation ("BCI") for laboratory testing. Stanton Wheasler, a forensic scientist from the BCI laboratory, testified that the tubing sample tested positive for methamphetamine. Two other HCL acid gas generators were found in the bed of Gierhart's

---

[2] Detective Jones is an employee of the Fairfield County Sheriff's Office.  At the time of the incident, Detective Jones was assigned to the FHMCU.

[3] Detective Sims is an employee of the Lancaster Police Department.  At the time of the incident, Detective Sims was assigned to the FHMCU.

truck. Samples from these devices were not sent to the BCI for testing because of their exposure to the outside elements. A photograph of the devices, however, was admitted at trial.

{¶ 8} A common hair dryer was also found on the kitchen counter of the residence during execution of the search warrant. Detective Sims testified that in his experience, hair dryers are often used to complete the drying process from liquid to solid methamphetamine. Detective Sims and Detective Moritz also testified that small plastic baggies were found in Gierhart's bedroom, and noted that in their experience, such items are commonly used to package illegal drugs.

{¶ 9} Finally, there was a great deal of testimony regarding a mason jar and a Coleman fuel container found at the residence. Detective Sims and Detective Moritz testified that the mason jar had been filled with a liquid that they believed to be Coleman fuel containing methamphetamines. Detective Sims and Detective Moritz explained that Coleman fuel is commonly used in the salting out process of the one-pot/shake-n-bake method of methamphetamine production. Samples from the mason jar were submitted to the BCI laboratory for testing. Stanton Wheasler testified that the samples tested positive for methamphetamines.

{¶ 10} Gierhart also testified in his own defense. Gierhart stated that he retrieved the aforementioned items from the residence of a friend, just the night prior to the search of his residence, in order to help prepare the friend's home for the return of her son. Gierhart testified that he simply wished to sort through the property and salvage items that could be of use or value.

{¶ 11} At the conclusion of the trial, the jury returned guilty verdicts on all three counts. The trial court entered a judgment of conviction upon the jury's verdict and sentenced Gierhart

to a cumulative prison sentence of three years.[4] The trial court also imposed a five-year driver's license suspension.

{¶ 12} By way of this appeal, Gierhart only challenges the conviction for Illegal Manufacture of Drugs[5] and asserts the following assignment of error:

Assignment of Error:

> AN ERRONEOUS JURY INSTRUCTION DIRECTING THE JURY TO FIND GIERHART GUILTY OF ILLEGAL MANUFACTURE OF DRUGS FOR MERELY POSSESSING METHAMPHETAMINES DEPRIVED GIERHART OF DUE PROCESS, WHETHER BY PLAIN ERROR ANALYSIS OR BY INEFFECTIVE ASSISTANCE OF COUNSEL FOR FAILING TO OBJECT.

{¶ 13} In his sole assignment of error, Gierhart makes two distinct arguments. First, Gierhart contends that the trial court plainly erred by giving a jury instruction on the charge of Illegal Manufacture of Drugs that was "inaccurate and inconsistent with [the] law." Specifically, Gierhart argues that in instructing the jury on the element of manufacture, an essential element of the offense of Illegal Manufacture of Drugs, the trial court mistakenly replaced the word "process" with the word "possess". Because there was clear testimony that Gierhart possessed methamphetamines, Gierhart argues that "[t]he jury simply followed the [t]rial [c]ourt's erroneous instruction and entered a verdict of guilty upon evidence of possession." Second, Gierhart contends that his trial counsel rendered ineffective assistance of counsel when he did not object to the jury instruction.

{¶ 14} The trial court delivered the following jury instruction with regard to the Illegal Manufacture of Drugs offense:

---

[4] Specifically, Gierhart was sentenced to a three-year prison sanction for the Illegal Manufacture of Drugs conviction; a two-year prison sanction for the Illegal Assembly or Possession of Chemicals for the Manufacture of Drugs conviction; and a six-month prison sanction for the Possessing Criminal Tools conviction. The trial court further ordered that the sentences be served concurrently.

[5] R.C. 2925.04(A) provides in part that "[n]o person shall * * * knowingly manufacture or otherwise engage in any part of the production of a controlled substance." "Whoever commits a violation of division (A) of [R.C. 2925.04] that involves any drug other than marihuana is guilty of illegal manufacture of drugs[.]" R.C. 2925.04(C)(1).

With respect to Count I, the defendant is charged with the Illegal Manufacturing of Drugs. Now before you can find the defendant guilty, you must find beyond a reasonable doubt that on or about January 16, 2013, in Hocking County, Ohio, the defendant knowingly manufactured or otherwise engaged in any part of the production of methamphetamine knowingly. * * * Now, manufacturing means to plant, cultivate, harvest, possess, make, prepare or otherwise engage in any part of chemical synthesis or compounding or any combination of the same and includes packaging, repackaging, labeling, and other activities incident to production.

[Trial Tr. at 228-230.]

{¶ 15} The trial record reveals that Gierhart did not object to the court's jury instruction concerning the definition of "manufacture" despite being given the opportunity to do so on at least two occasions. [*See* Trial Tr. at 235, 238.] Thus, we can recognize the error only if it constitutes plain error. "To constitute plain error, a reviewing court must find (1) an error in the proceedings, (2) the error must be a plain, obvious or clear defect in the trial proceedings, and (3) the error must have affected 'substantial rights' (i.e., the trial court's error must have affected the trial's outcome)." *State v. Dickess*, 174 Ohio App.3d 658, 2008-Ohio-39, 884 N.E.2d 92, ¶ 31 (4th Dist.), citing *State v. Hill*, 92 Ohio St.3d 191, 749 N.E.2d 274 (2001), and *State v Barnes*, 94 Ohio St.3d 21, 27, 2002-Ohio-68, 759 N.E.2d 1240. "Furthermore, notice of plain error must be taken with the utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice." *Id*., citing *State v. Landrum*, 53 Ohio St.3d 107, 111, 559 N.E.2d 710 (1990), and *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus. "A reviewing court should notice plain error only if the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id*.

{¶ 16} "When we review a trial court's jury instructions, we may not judge 'a single instruction to a jury * * * in artificial isolation,' but we must view it 'in the context of the overall charge.' " *State v. Stephenson*, 4th Dist. Adams No. 12CA936, 2013-Ohio-771, ¶ 20, quoting *State v. Madrigal*, 87 Ohio St.3d 378, 396, 721 N.E.2d 52 (2000). "Thus, we must consider the jury instructions 'as a whole' and then determine whether the jury charge probably misled the jury in a manner materially affecting the complaining party's substantial rights." *Id*. As explained further by the Ohio Supreme Court:

> In determining the question of prejudicial error in instructions to the jury, the charge must be taken as a whole, and the portion that is claimed to be erroneous or incomplete must be considered in its relation to, and as it affects and is affected by the other parts of the charge. If from the entire charge it appears that a correct statement of the law was given in such a manner that the jury could not have been misled, no prejudicial error results.

*State v. Hardy*, 28 Ohio St.2d 89, 92, 276 N.E.2d 247 (1971).

{¶ 17} "A defective jury instruction does not rise to the level of plain error unless the defendant shows that the outcome of the trial clearly would have been different but for the alleged erroneous instruction." *Dickess* at ¶ 32, citing *State v. Campbell*, 69 Ohio St.3d 38, 41, 630 N.E.2d 339 (1994), and *Cleveland v. Buckley*, 67 Ohio App.3d 799, 805, 588 N.E.2d 912 (8th Dist.1990).

{¶ 18} Under R.C. 2925.01(J), " '[m]anufacture' means to plant, cultivate, harvest, process, make, prepare, or otherwise engage in any part of the production of a drug, by propagation, extraction, chemical synthesis, or compounding, or any combination of the same, and includes packaging, repackaging, labeling, and other activities incident to production."

{¶ 19} In this case, the trial court's instruction did contain a minor error in its definition of manufacture. However, the error was not so severe as to mislead the jury or to constitute plain error. Gierhart concedes that with the exception of the trial court's use of the word "possess" instead of "process", "the instruction is consistent with the statutory definition of [m]anufacture in R.C. 2925.01(J)." [Merit Brief at 10.] " 'Ordinarily, reversible error does not consist of misstatements or ambiguities in only part of the instructions.' " *State v. Delawder*, 4th Dist. Scioto No. 10CA3344, 2012-Ohio-1923, ¶ 30, quoting *State v. Pettit*, 4th Dist. Vinton No. 99CA529, 2000 WL 897993, *3 (July 5, 2000). Moreover, a review of the complete jury instruction delivered by the trial court with regard to the offense of Illegal Manufacture of Drugs, clearly demonstrates that the trial court provided the jury with adequate instructions to allow the jury to correctly determine Gierhart's guilt. The instruction correctly noted that guilt could be established by evidence that the defendant made, prepared, or otherwise engaged in the chemical synthesis of methamphetamine. And here, there was an abundance of circumstantial evidence that could lead the jury to reasonably conclude that Gierhart made, prepared, or otherwise engaged in the chemical synthesis of methamphetamines – most notably the presence of components and chemicals needed to produce methamphetamine, the alteration of various items that are commonly used in the one-pot/shake-n-bake method of production, and the presence of the liquid containing the methamphetamine. Thus, when viewing the jury instruction as a whole, we find that the trial court properly instructed the jury with regard to the offense of Illegal Manufacture of Drugs. There is also no danger, given the abundance of evidence in this case, that but for the erroneous instruction, the outcome of the trial clearly would have been different. Accordingly, Gierhart's argument that the trial court committed plain error when instructing the jury regarding the offense of Illegal Manufacture of Drugs is not well taken.

{¶ 20} Gierhart also contends that he was denied effective assistance of counsel. Specifically, Gierhart argues that he was denied the effective assistance of counsel because his trial counsel failed to object to the jury instruction.

{¶ 21} To establish constitutionally ineffective assistance of counsel, a defendant must show (1) that his counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense and deprived him of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Issa*, 93 Ohio St.3d 49, 67, 752 N.E.2d 904 (2001); *State v. Goff*, 82 Ohio St.3d 123, 139, 694 N.E.2d 916 (1998). "In order to show deficient performance, the defendant must prove that counsel's performance fell below an objective level of reasonable representation. To show prejudice, the defendant must show a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." (Citations omitted.) *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, ¶ 95. "Failure to establish either element is fatal to the claim." *State v. Jones*, 4th Dist. Scioto No. 06CA3116, 2008-Ohio-968, ¶ 14. Therefore, if one element is dispositive, a court need not analyze both. *See Madrigal*, 87 Ohio St.3d at 389, 721 N.E.2d 52 (stating that a defendant's failure to satisfy one of the elements "negates a court's need to consider the other."). In Ohio, there is a presumption that a properly licensed attorney is competent. *State v. Calhoun*, 86 Ohio St.3d 279, 289, 714 N.E.2d 905 (1999).

{¶ 22} As noted above, we find that the jury instruction did not affect the outcome of the proceedings in this case.[6] Thus, even if counsel had objected, we cannot conclude with reasonable probability that a "correct" instruction would have resulted in a finding of innocence

---

[6] While we acknowledge that the "clearly would have been different" language used in plain error analysis establishes a slightly stiffer burden than the "reasonable probability" language used in evaluating ineffective assistance claims, we nonetheless conclude that in the instant case, the evidence of guilt is so overwhelming that under either analysis we cannot find reversible error. *See generally*, *Pettit*, supra.

on behalf of Gierhart. There is simply an abundance of circumstantial evidence in this case that would permit a reasonable jury to conclude that Gierhart did manufacture methamphetamine. Accordingly, Gierhart cannot demonstrate that he was prejudiced by his counsel's failure to object to the jury instruction, and his ineffective assistance claim is not well taken.

{¶ 23} For the foregoing reasons, we overrule Gierhart's sole assignment of error and affirm the judgment of the trial court.

JUDGMENT AFFIRMED.

**JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED. Appellant shall pay the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Hocking County Common Pleas Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of the proceedings in that court. If a stay is continued by this entry, it will terminate at the earliest of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to the expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, P.J. & Harsha, J.: Concur in Judgment & Opinion.

For the Court

By:_____
            Marie Hoover, Judge


**NOTICE TO COUNSEL**

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.