The STATE of Ohio, Appellee,

v.

CLIFTON, Appellant.

[Cite as State v. Clifton, 172 Ohio App.3d 86, 2007-Ohio-3392.]

Court of Appeals of Ohio,
Fourth District, Hocking County.

No. 06CA14.

Decided June 27, 2007.

88

James R. Kingsley, for appellant.

Larry E. Beal, Hocking County Prosecuting Attorney, for appellee.

McFARLAND, Presiding Judge.

{¶ 1} Defendant-appellant, William E. Clifton, appeals from his conviction of operating a vehicle while intoxicated ("OVI"), in violation of R.C. 4511.19(A)(1)(a), after a jury trial in the Hocking County Municipal Court, as well as from the trial court's denial of his motion for new trial. Appellant alleges that (1) the trial court prejudicially polled the jury; (2) the trial court prejudicially interjected itself into the trial; (3) the trial court gave an improper, second *Allen* charge during jury deliberations; and (4) prejudicial prosecutorial misconduct occurred. Because we conclude that appellant's third assignment of error has merit, we reverse the judgment of the trial court and remand this matter for further proceedings consistent with this opinion.

## I. Facts

{¶ 2} On January 16, 2006, appellant's vehicle was stopped by Trooper Ward of the Ohio Highway Patrol after the trooper witnessed appellant drive left of center. Because the road appellant was traveling had no area in which to pull over, appellant initially stopped his car in the middle of the road before being directed, by the trooper, to get back into the car and pull into a nearby church parking lot. Upon making contact with appellant, Trooper Ward noticed that appellant displayed red, glassy, bloodshot eyes and slurred speech. Trooper Ward also noticed a strong odor of alcohol.

{¶ 3} In response to these observations, Trooper Ward decided to administer the horizontal gaze nystagmus ("HGN") test. He received all six indicators from appellant on that test. The trooper then asked appellant to perform the one-leg stand test, which appellant could not complete. Finally, Trooper Ward asked appellant to recite the alphabet B–T. Appellant either could not, or would not comply, and as a result, Trooper Ward placed appellant under arrest for OVI and transported him back to the sheriff's office for a blood-alcohol-content ("BAC") test.

{¶ 4} Although appellant agreed to take a BAC Datamaster test, two attempts resulted in "incomplete" readings. Trooper Ward concluded that appellant was refusing the test, marked the form as such, cited appellant for OVI and driving left of center, and took appellant home.

{¶ 5} At trial, Trooper Ward testified to the events that occurred that night and opined that appellant had been under the influence of alcohol. Appellant testified in his own defense, admitting that he had had a few beers that night, which he had mixed with prescription medication. He also testified that he had been awake for nearly 21 hours at the time he was stopped. Nonetheless, appellant explained that his red, bloodshot eyes were the result of having a battery blow up in his face when he was only 12 years old. He also explained that the reason he was not able to complete the one-leg stand test or the BAC Datamaster test was because of injuries he sustained in a recent ATV accident, which resulted in a twisted ankle and a punctured lung. He further testified that he did not comply with the alphabet test because he was "a little slow" and thought he was being tricked, as the alphabet was A–Z "in [his] book," not B–T.

{¶ 6} The jury ultimately found appellant guilty of driving under the influence, and the trial court found him guilty of driving left of center. The trial court ordered that appellant serve a partially suspended jail sentence, with a combination of community service, paying a mandatory fine, receiving a three-year suspension of his driving privileges and serving three years of probation. Appellant filed a motion for a new trial, which was denied by the trial court. Appellant now appeals his convictions and the denial of his motion for a new trial.

## II. Assignments of Error

{¶ 7} "I. Did the trial court prejudicially poll the jury?

{¶ 8} "II. Did the trial court prejudicially interject itself into the trial?

{¶ 9} "III. Did the trial court improperly give an improper second 'Allen charge'?

{¶ 10} "IV. Did prejudicial prosecutorial misconduct occur?"

## III. Legal Analysis

{¶ 11} We will address appellant's assignments of error out of order for ease of analysis. In his second assignment of error, appellant contends that the trial court prejudicially interjected itself into the trial. Generally speaking, judges have broad discretion in the manner by which they control the courtroom proceedings, and those decisions will not be reversed absent an abuse of that discretion. See *State v. Williams* (May 18, 1998), Highland App. No. 97CA928, 1998 WL 290240; *Hatfield v. Hatfield* (Mar. 18, 1996), Ross App. No. 95CA2112, 1996 WL 131166; *State v. Roach* (Sept. 27, 1995), Gallia App. No. 94CA22, 1995 WL 669173; *State v. Matheny* (Mar. 2, 1994), Hocking App. No. 92CA19, 1994 WL 63045.

{¶ 12} An abuse of discretion is more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. *State v. Clark* (1994), 71 Ohio St.3d 466, 470, 644 N.E.2d 331; *State v. Moreland* (1990), 50 Ohio St.3d 58, 61, 552 N.E.2d 894; *State v. Adams* (1980), 62 Ohio St.2d 151, 157, 16 O.O.3d 169, 404 N.E.2d 144. An abuse of discretion means that the result is so palpably and grossly violative of fact or logic that it evidences not the exercise of will but the perversity of will, not the exercise of judgment but the defiance of judgment, not the exercise of reason, but, rather, passion or bias. *Nakoff v. Fairview Gen. Hosp.* (1996), 75 Ohio St.3d 254, 256, 662 N.E.2d 1. Reviewing courts should not substitute their judgment for the trial court's judgment when determining how best to carry out the trial court's discretionary duties. See *In re Jane Doe 1* (1991), 57 Ohio St.3d 135, 137–138, 566 N.E.2d 1181; *Berk v. Matthews* (1990), 53 Ohio St.3d 161, 169, 559 N.E.2d 1301.

{¶ 13} Appellant first contends that the trial court made prejudicial comments regarding the jury's viewing of the dash video and then further prejudiced him by giving a curative instruction regarding the viewing of the video when deliberations began. We disagree.

{¶ 14} During trial and at the time the dash video was originally played for the jury, the trial court first viewed the tape outside of the presence of the jury to ensure that it had been properly redacted. It had not. During jury instructions, the trial court made a statement to the jury as follows:

> You will be given all the exhibits except Exhibit A and I'm going to ask the bailiff to hold on to the tape. If you want to view that or the time you want to view that, I will ask the bailiff to be present to run the VCR and the TV so you properly view it and don't see anything that I deem you're not supposed to see.

{¶ 15} Appellant's counsel took issue with this statement by the court. The court then issued the following curative instruction:

> And let me say something. To my understanding, this tape, aside from the matters that are relevant to the current proceeding, have other traffic stops and if you misunderstood me when I said you are only going to be able watch what I said you can watch, that's what I meant, that there is only a certain portion of this that I'm going to permit you to watch and the only way that I can enforce that rule is to make sure my bailiff runs the VCR machine.

{¶ 16} Appellant now argues on appeal that the judge's initial comment to the jury "told them the tape contained something that they're not allowed to see which means the Defendant did something bad." Appellant further argues that the trial court "improperly emphasized the portions not to be seen and only an adverse inference could be drawn from it." We are not persuaded by appellant's arguments. Rather, we conclude that the jurors could have reasonably inferred that the tape contained many traffic stops, in addition to appellant's stop, and

that the other stops were irrelevant to the case the jurors were to decide. Therefore, they were not permitted to view those segments of the video.

{¶ 17} After carefully reviewing the entire transcript, paying particular attention to these portions of the transcript, as well as to the other instances appellant cites in his brief as examples of the trial court interjecting itself into the proceedings, we find nothing arbitrary, unconscionable, or unreasonable. Accordingly, we find no merit in appellant's second assignment of error.

{¶ 18} We next turn our attention to appellant's fourth assignment of error, in which appellant contends that prejudicial prosecutorial misconduct occurred during trial. Appellant specifically asserts that the prosecutor repeatedly "harped" on harm to public safety, prejudicially and repeatedly referred to "per se" violations of R.C. 4511.19 even though this case did not involve a per se violation of the statute, and that the prosecutor prejudicially asserted his personal opinion during closing arguments.

{¶ 19} As the Supreme Court of Ohio noted in *State v. Lott* (1990), 51 Ohio St.3d 160, 555 N.E.2d 293, when reviewing a claim of prosecutorial misconduct, the relevant inquiry for an appellate court is, first, whether the prosecutor's remarks actually were improper, and second, if they were, whether any of defendant's substantial rights were adversely affected. Further, as the court noted in another case, in determining whether the remarks objected to were prejudicial to the accused, the appellate court must review the entire closing argument. *State v. Keenan* (1993), 66 Ohio St.3d 402, 613 N.E.2d 203. The court has held that wide latitude is appropriate for both sides in their closing "as to what the evidence has shown and what reasonable inferences may be drawn therefrom." *Lott*, 51 Ohio St.3d at 165, 555 N.E.2d 293, quoting *State v. Stephens* (1970), 24 Ohio St.2d 76, 82, 53 O.O.2d 182, 263 N.E.2d 773. Reversal is warranted only if the prosecutorial misconduct "permeates the entire atmosphere of the trial." *United States v. Warner* (C.A.6, 1992), 955 F.2d 441, 456. See, also, *State v. Tumbleson* (1995), 105 Ohio App.3d 693, 664 N.E.2d 1318.

{¶ 20} We will address the prosecutor's comments regarding per se statutory violations and the prosecutor's comments regarding his personal opinions first. We note that while "[i]t is improper for an attorney to express his personal belief or opinion as to the credibility of a witness or as to the guilt of the accused[,]" *State v. Smith* (1984), 14 Ohio St.3d 13, 14, 14 OBR 317, 470 N.E.2d 883, "the misconduct's effect on the trial, not the blameworthiness of the prosecutor, is the crucial inquiry for due process purposes." *Smith v. Phillips* (1982), 455 U.S. 209, 220, fn. 10, 102 S.Ct. 940, 71 L.Ed.2d 78. As such, misconduct is not grounds for reversal unless the defendant has been denied a

fair trial. *State v. Maurer* (1984), 15 Ohio St.3d 239, 266, 15 OBR 379, 473 N.E.2d 768.

{¶ 21} After reviewing all the closing arguments, we agree with the state that the prosecutor's comments related to per se statutory violations were made in direct rebuttal to appellant's counsel's remarks in closing about his theory regarding the highway patrol's "zero tolerance" policy when it comes to OVI offenses. As such and assuming arguendo that the prosecutor's comments were improper, any error in their introduction was invited by appellant's counsel. Further, as to the prosecutor's comments regarding his personal opinion that it would personally take his drinking a case of beer to be intoxicated under the prior per se limit of .15, we cannot conclude that these comments would have been enough to affect the outcome of the trial. We further believe that the trial court's instructions to the jury that arguments made by counsel in opening and closing remarks are not to be relied on as evidence would have prevented the jurors from being misled in any way by the prosecutor's comments.

{¶ 22} We next address appellant's assertion that the prosecutor prejudicially and repeatedly "harped" on harm to public safety. Appellant cites *State v. Garrett,* Cuyahoga App. No. 80172, 2003-Ohio-274, 2003 WL 152820 in support of his argument that "[p]laying the public safety card to the jury is improper." We disagree with appellant's understanding of the court's holding in *Garrett. Garrett* held that " 'although "[a] prosecutor may not urge jurors to convict a criminal defendant in order to protect community values, preserve civil order, or deter future lawbreaking * * * [,]" "[i]n order to rise to constitutional proportions, an improper prosecutorial remark must cause substantial prejudice to the defendant." ' " Id. at ¶ 61, quoting *United States v. Monaghan* (1984), 741 F.2d 1434, 1441, 1443. That holding says nothing with respect to public safety.

{¶ 23} In *Mentor v. Giordano* (1967), 9 Ohio St.2d 140, 38 O.O.2d 366, 224 N.E.2d 343, paragraph five of the syllabus, the Supreme Court of Ohio held that "[t]he primary purpose of statutes and ordinances making it an offense to operate a motor vehicle while under the influence of intoxicating liquor is to protect the users of streets and highways from the hazard of vehicles under the management of persons who have consumed alcoholic beverages to such an extent as to appreciably impair their faculties." Further, in holding that R.C. 4511.19 imposes strict liability, the First District Court of Appeals held that "the overall design of the statute is to protect against the hazards to life, limb and property created by drivers who have consumed so much alcohol that their faculties are impaired." *State v. Grimsley* (1982), 3 Ohio App.3d 265, 267, 3 OBR 308, 444 N.E.2d 1071, citing *Mentor,* supra. In making this finding, *Grimsley* held that "[t]he act of driving a vehicle while under the influence of alcohol (or drugs, or a combination of both) is a voluntary act in the eyes of the law, and duty to refrain from doing

so is one that in the interests of public safety must be enforced by strict criminal liability * * *." Id. at 268, 3 OBR 308, 444 N.E.2d 1071. Finally, the Supreme Court of Ohio, in *State v. Gill* (1994), 70 Ohio St.3d 150, 637 N.E.2d 897, stated that "[t]he gravity of the problem of driving while intoxicated is revealed by the number of needless tragic injuries and deaths that occur on the roadways in this state."

{¶ 24} In light of the recognized public safety purposes behind the statute governing driving while under the influence of alcohol or drugs, we find no error in the prosecutor's inclusion of statements regarding public safety and references to tragedies occurring in connection with drunk driving. Thus, because appellant has failed to demonstrate that he was prevented from having a fair trial as a result of these statements, we find no merit in appellant's fourth assignment of error.

{¶ 25} We now turn our attention to appellant's third assignment of error. In his third assignment of error, appellant contends that the trial court gave an improper, second "*Allen* charge" to the jury during deliberations. See *Allen v. United States* (1896), 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528. In support of this assigned error, appellant asserts that the trial court prejudicially departed from the "altered, limited '*Allen* Charge,'" approved by the Supreme Court of Ohio and "improperly interjected its feelings about the deadlock." Appellant also argues that the trial court made unwarranted statements about coerced Saturday court.

{¶ 26} We initially note that appellant did not object to the court's jury instructions. The failure to object to a jury instruction waives any claim of error relative to that instruction unless, but for the error, the outcome of the trial clearly would have been otherwise. *State v. Barrett*, Scioto App. No. 03CA2889, 2004-Ohio-2064, 2004 WL 878002, citing *State v. Noling*, 98 Ohio St.3d 44, 2002-Ohio-7044, 781 N.E.2d 88.

{¶ 27} In *State v. Howard* (1989), 42 Ohio St.3d 18, 537 N.E.2d 188, the Supreme Court of Ohio approved a supplemental charge to be given to juries that have become deadlocked on the question of conviction or acquittal. The *Howard* charge states:

The principal mode, provided by our Constitution and laws, for deciding questions of fact in criminal cases, is by jury verdict. In a large proportion of cases, absolute certainty cannot be attained or expected. Although the verdict must reflect the verdict of each individual juror and not mere acquiescence in the conclusion of your fellows, each question submitted to you should be examined with proper regard and deference to the opinions of others. You should consider it desirable that the case be decided. You are selected in the

same manner, and from the same source, as any future jury would be. There is no reason to believe the case will ever be submitted to a jury more capable, impartial, or intelligent than this one. Likewise, there is no reason to believe that more or clearer evidence will be produced by either side. It is your duty to decide the case, if you can conscientiously do so. You should listen to one another's arguments with a disposition to be persuaded. Do not hesitate to reexamine your views and change your position if you are convinced it is erroneous. If there is disagreement, all jurors should reexamine their positions, given that a unanimous verdict has not been reached. Jurors for acquittal should consider whether their doubt is reasonable, considering that it is not shared by others, equally honest, who have heard the same evidence, with the same desire to arrive at the truth, and under the same oath. Likewise, jurors for conviction should ask themselves whether they might not reasonably doubt the correctness of a judgment not concurred in by all other jurors.

{¶ 28} Here, the jury deliberated for less than two hours before asking, "What is the option if we can't agree?" In response to this question, the trial court gave a verbatim *Howard* charge and then, because it was beyond the court's normal hours and was getting late in the evening, the court gave the jury options regarding whether to bring in drinks and order food, whether they should come back the next day, which was Saturday, or whether to come back on Monday if they could not resolve the case. Appellant attempts to turn this offer by the trial court into a "coercion of Saturday court." We disagree with appellant's characterization of the trial court's instructions and find no error in the additional instructions as given.

{¶ 29} Appellant further asserts that a second "*Allen* charge" was given to the jury, also improper. After the trial court's initial *Howard* charge was provided and the jurors decided to continue to deliberate into the evening, the jurors came back with another question, which asked the trial court to define "adversely affected." There was no indication at this point that the jury was hopelessly deadlocked, but rather, the question related to a term provided to them as part of the jury instructions. As part of its response to the question posed by the jury, the trial court commented that it was "very fearful that [the jury] may be focusing on something other than the elements here," and "that really disappoints" the court. The court added, "Because the last thing anybody wants to see here is after two or three days of deliberations that we have to call another jury." The court also questioned the jury as to whether that was "fair to anybody involved here."

{¶ 30} Appellant argues that the additional language provided by the trial court in answer to the jury's second question was improper. Thus, the pivotal question

presently before this court is whether this additional language ran afoul of the Supreme Court's directive in *Howard*.

{¶ 31} This court has previously acknowledged that the better practice is to give the precise *Howard* instruction as approved by the Supreme Court of Ohio. See *Barrett*, 2004-Ohio-2064; See, also, *State v. Mulhern*, Vinton App. No. 02CA565, 2002-Ohio-5982, 2002 WL 31429774, citing *State v. Lopez* (1993), 90 Ohio App.3d 566, 582, 630 N.E.2d 32; *State v. Willis* (July 29, 1996), Stark App. No. 95CA202, 1996 WL 488810. However, as aptly noted by the Eighth District Court of Appeals, the *Howard* charge is not an absolute mandate for trial courts to follow, but rather a suggestion. *State v. Williams* (July 5, 1995), Cuyahoga App. No. 66864, 1995 WL 396369. If a court deviates from the *Howard* language, the court must ensure that the charge satisfies the concerns of the *Howard* opinion. In particular, a court must ensure that the instruction (1) encourages a unanimous verdict only when one can conscientiously be reached, leaving open the possibility of a hung jury and resulting mistrial; and (2) calls for all jurors to reevaluate their opinions, not just the minority members. Id.; See, also, *State v. Matyas* (Dec. 6, 2000), Jefferson App. No. 98–JE–14, 2000 WL 1808575; *State v. McClendon* (Jan. 20, 1998), Stark App. No. 97CA71, 1998 WL 518524; *State v. Dixon* (Mar. 13, 1997), Cuyahoga App. No. 68338, 1997 WL 113756.

{¶ 32} Further, we are mindful of the general rule that the trial judge is to remain impartial and refrain from making comments that may influence the jury. *State v. Boyd* (1989), 63 Ohio App.3d 790, 794, 580 N.E.2d 443. "[T]he judge must be cognizant of the effect of his comments upon the jury * * *." *State v. Wade* (1978), 53 Ohio St.2d 182, 187, 7 O.O.3d 362, 373 N.E.2d 1244, vacated and remanded on other grounds (1978), 438 U.S. 911, 98 S.Ct. 3138, 57 L.Ed.2d 1157.

{¶ 33} After thoroughly reviewing the trial court's jury instructions in this case, we conclude that the court's comments ran afoul of *Howard*. We are concerned by the trial court's voicing its "disappointment" in the jury, especially in such close connection with its comments regarding the jury's failure to reach a decision and the possibility of having to retry the case in front of another jury. The trial court's instruction should have simply encouraged the jury to arrive at a decision, rather than explicitly expressing displeasure with the jury's efforts. We believe that the court's instruction did not leave open the possibility of a hung jury. While we understand that trial judges should encourage juries to resolve cases, it should not be done in a manner in which the tenor and coercive nature of the instructions place intense pressure on the jury. Therefore, we find plain error in the court's comments and merit in appellant's third assignment of error. Therefore, we reverse the decision of the trial court.

{¶ 34} In light of our disposition of appellant's third assignment of error, we decline to address appellant's first assignment of error, as it has been rendered moot.

{¶ 35} Accordingly, we reverse appellant's convictions for OVI and driving left of center and remand this matter to the trial court for further proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

ABELE, J., concurs.

KLINE, J., concurs in judgment only.