[Cite as *State v. Cenexant*, 2023-Ohio-3388.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CLARK COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Appellee | : | C.A. No. 2023-CA-11 |
| | : | |
| v. | : | Trial Court Case No. 22 CRB 00545 |
| | : | |
| JONA CENEXANT | : | (Criminal Appeal from Municipal Court) |
| | : | |
| Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on September 22, 2023

. . . . . . . . . . .

CHRIS BECK, Attorney for Appellant

ERIN J. MCENANEY, Attorney for Appellee

. . . . . . . . . . . .

LEWIS, J.

{¶ 1} Defendant-Appellant Jona Cenexant appeals from the judgment of the Municipal Court of Clark County convicting her of one count of domestic violence following a jury trial. For the following reasons, we will affirm the judgment of the trial court.


I. Facts and Course of Proceedings

{¶ 2} On February 20, 2022, Cenexant allegedly smacked her husband, Roland Mercilien, with her hand and struck him with a broom. Mercilien, whose primary language is Haitian Creole, contacted the Springfield Police Department on February 26, 2022, about the incident. The Springfield Police issued an arrest warrant for Cenexant. She was charged with one count of domestic violence, a first-degree misdemeanor in violation of R.C. 2919.25(A), and one count of assault, a first-degree misdemeanor in violation of R.C. 2903.13(A).

{¶ 3} A jury trial was held on February 15, 2023. Mercilien and Springfield Police Sergeant Aaron Hayes testified at the trial. Mercilien, through an interpreter, recalled the events of February 20, 2022. Mercilien testified that Cenexant had physically abused him. Videos Mercilien recorded of the physical abuse were shown to the jury during Mercilien's testimony. Sergeant Hayes testified about the investigation he conducted after Mercilien reported the physical abuse on February 26, 2022. He confirmed that a number of the pictures shown to the jury were accurate depictions of Mercilien's physical condition on that date. Mercilien had told Sergeant Hayes that the abuse occurred on February 20, 2022.

{¶ 4} After the jury deliberations began, the trial court was twice advised by the jury foreperson that the jury was deadlocked. After the first notification, the trial court read a jury instruction for them based on the instruction approved by the Ohio Supreme Court in *State v. Howard*, 42 Ohio St.3d 18, 537 N.E.2d 188 (1989). After the second notification, Cenexant moved for a mistrial. The trial court overruled the motion and stated that it would give the jury one more opportunity to attempt to reach a verdict. The

trial court then gave the jury a second, shorter supplemental jury instruction that included a restatement of the standard jury instruction on circumstantial evidence, which the trial court had previously given to the jury before the commencement of jury deliberations.

{¶ 5} After further deliberation, the jury returned guilty verdicts on both counts. The trial court merged the offenses, proceeded on the domestic violence count, and sentenced Cenexant to 120 days in jail and placed her on probation for two years. The trial court suspended all 120 days of the jail sentence and fined Cenexant $500 plus court costs. Cenexant filed a timely notice of appeal.

II. Cenexant Waived All but Plain Error Regarding the Trial Court's Failure to Voir Dire and Determine the Qualifications of the Interpreter

{¶ 6} Cenexant's first assignment of error states:

THE TRIAL COURT ERRED IN FAILING TO PROPERLY VOIR DIRE AND DETERMINE THE QUALIFICATIONS OF THE INTERPRETER.

{¶ 7} Cenexant contends that the trial court "failed to assure that the interpreter's qualifications were sufficient" under R.C. 2311.14 and Sup.R. 88. Appellant's Brief, p. 7. According to Cenexant, "the record does not reflect whether the interpreter was certified by the Ohio Supreme Court or if the interpreter was qualified in any manner." *Id.* Further, the record does not reflect whether the trial court or counsel performed any voir dire of the interpreter's abilities. *Id.*

{¶ 8} The State responds that Cenexant failed to object to the use of the interpreter at trial and has waived all but plain error on appeal. Appellee's Brief, p. 3. The State

contends that "[t]here is nothing in the record to indicate that the interpreter's performance, or the Court's failure to properly voir dire the interpreter in any way effected [sic] the outcome of the trial. This being said, the Court's actions in this case concerning the interpreter were not plain error." *Id.* at 4.

**{¶ 9}** There is no evidence in the transcript that the trial court conducted any voir dire of the interpreter or identified any of the interpreter's credentials. Rather, the trial court made the following statements immediately after counsel had finished opening statements as the court was preparing to swear in the first witness, Mercilien:

> THE COURT: All right. At this time the state may call its first witness.

> MS. MCENANEY: Your Honor, we would call Roland Mercilien to the stand.

> THE COURT: Ladies and gentleman, this witness will be using an interpreter. We are going to position the interpreter here so we are going to bring a chair over so that he can sit here and face you as he does the interpretation.

> THE BAILIFF: Please raise your right hand.

> THE COURT: I'm sorry, before you do that. The Court finds that Laventure Mycthil is qualified by specialized knowledge, skill, experience, training or education to serve as an expert interpreter and that the defendant is able to understand and communicate through this interpreter. Therefore, the Court appoints Laventure Mycthil as the interpreter in this

case.

If you would please raise your right hand.

[WHEREUPON THE INTERPRETER WAS SWORN.]

Trial Tr. 74-75

{¶ 10} Apparently, the interpreter was used only during the testimony of Mercilien to assist Mercilien in understanding the questions and then to translate his answers from Haitian Creole into English so that the jury could understand his answers. The interpreter does not appear to have been used at any other point of the trial or to assist Cenexant.

{¶ 11} In *State v. Bravo*, 2017-Ohio-272, 81 N.E.3d 919 (9th Dist.), the Ninth District explained the importance of the trial court's duty to ensure the qualifications of an interpreter. " ' The failure to ensure that non-English speaking defendants are given the same opportunity as others to be present, to speak in their defense and to understand what is taking place, in whatever language they possess, reaches constitutional proportions.' " *Id.* at ¶ 34, quoting *State v. Pina*, 49 Ohio App.2d 394, 401, 361 N.E.2d 262 (2d Dist.1975). "The constitutional rights implicated include due process, equal protection, confrontation, and the effective assistance of counsel." (Citations omitted.) *Id.* These concerns primarily arise in situations involving a defendant who needs the assistance of an interpreter. That was not the case here. Rather, the interpreter here was necessary to assist the complaining witness, Mercilien. Indeed, there are notes in the record stating that Cenexant's prior defense counsel had advised the trial court in October 2022 that Cenexant did not require an interpreter. Further, the testimony of

Mercilien made it apparent that both he and Cenexant were fluent in Haitian Creole. Trial Tr. 97-98.

{¶ 12} The Ohio Rules of Evidence, the Ohio Revised Code, and the Rules of Superintendence for the Courts of Ohio also address and regulate the use of interpreters. Evid.R. 604 states that "[a]n interpreter is subject to the provisions of these rules relating to qualification as an expert and the administration of an oath or affirmation to make a true translation." R.C. 2311.14(A)(1) states that "[w]henever because of a hearing, speech, or other impairment a party to or witness in a legal proceeding cannot readily understand or communicate, the court shall appoint a qualified interpreter to assist such person." Further, R.C. 2311.14(B) provides that, "[b]efore entering upon official duties, the interpreter shall take an oath that the interpreter will make a true interpretation of the proceedings to the party or witness, and that the interpreter will truly repeat the statements made by such party or witness to the court, to the best of the interpreter's ability."

{¶ 13} The Supreme Court of Ohio has adopted Sup.R. 80 through 89 to address the use and regulation of interpreters. Sup.R. 88(A) requires a court to appoint a Supreme Court certified foreign language interpreter when such is necessary to allow a witness or party to participate in the proceedings in a meaningful way. Sup.R. 88(D) requires that any appointed interpreter be certified except under limited circumstances. Sup.R. 81 through 85 address the requirements and process for certification, and Sup.R. 84 expressly notes that interpreters shall be subject to the "Code of Professional Conduct for Court interpreters and Translators." This Code "consists of 10 Canons which serve as directives for interpreters in their service to the court, as well as provide guidance to

the court in rendering a determination in conjunction with Evid.R. 702 regarding the qualifications of any individual interpreter." *Bravo* at ¶ 38. "The Canons require, inter alia, accuracy and completeness, impartiality, proficiency, and a complete representation of the interpreter's qualifications." *Id.* "In addition, the Supreme Court of Ohio has developed a handbook for courts to facilitate efforts to establish the qualifications of an interpreter." (Citations omitted.) *Id.*

{¶ 14} We have found no evidence in the trial transcript that the trial court engaged in a colloquy with the interpreter to assess the interpreter's qualifications. Rather, the trial court simply made the conclusory statement that "The Court finds that Laventure Mycthil is qualified by specialized knowledge, skill, experience, training or education to serve as an expert interpreter and that the defendant is able to understand and communicate through this interpreter."[1]

{¶ 15} Despite the trial court's failure to assess the interpreter's qualifications, Cenexant and her trial counsel did not object to the use of the interpreter or to the interpreter's performance or qualifications. Where a party fails to object at trial to an interpreter's performance, an appellate court need not consider the appellant's complaint regarding the effectiveness of the interpreter, because the appellant did not call to the trial court's attention the alleged interpreter problem at trial where such error could have been avoided or corrected by the trial court. *In re Marriage of Beynenson*, 11th Dist. Geauga No. 2012-G-3066, 2013-Ohio-341, ¶ 26, citing *State v. Rivera*, 99 Ohio App.3d

---

[1] The trial court appears to have misspoken by stating that Cenexant rather than Mercilien, the complaining witness, was able to understand and communicate through the interpreter.

325, 650 N.E.2d 906 (11th Dist.1994). Similarly, a party's failure to object to the trial court's not qualifying an interpreter as an expert witness cannot be raised for the first time on appeal. *State v. Rosa*, 47 Ohio App.3d 172, 175, 547 N.E.2d 1232 (8th Dist.1988).

{¶ 16} Because Cenexant did not raise any concerns about the interpreter with the trial court, she has waived all but plain error on appeal. *In re M.A.P.*, 12th Dist. Butler Nos. CA2012-08-164, CA2012-08-165, 2013-Ohio-655, ¶ 59. "To prevail under the plain-error standard, a defendant must show that an error occurred, that it was obvious, and that it affected his substantial rights." (Citation omitted.) *State v. Obermiller*, 147 Ohio St.3d 175, 2016-Ohio-1594, 63 N.E.3d 93, ¶ 62. An error affecting substantial rights "must have affected the outcome of the trial." (Citations omitted.) *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002). The law is well-established that "[n]otice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

{¶ 17} We cannot conclude on the record before us that any errors committed by the trial court regarding the use of the interpreter affected the outcome of the trial. Cenexant has failed to identify any errors made by the interpreter or even allege that the interpreter made any errors in translating Mercilien's testimony. Further, it appears that both Mercilien and Cenexant were fluent in Haitian Creole. Therefore, Cenexant could understand Mercilien's testimony without any assistance from the interpreter, and she had the opportunity to work with her counsel to ensure that the interpreter was accurately translating Mercilien's testimony. Finally, Cenexant makes no argument that the results

of the trial would have been different had the trial court performed a voir dire of the interpreter.

{¶ 18} The first assignment of error is overruled.


III.     Cenexant Has Not Shown Plain Error in the Trial Court's Supplemental Jury Instructions

{¶ 19} Cenexant's second assignment of error states:

THE TRIAL COURT ERRED IN PROVIDING THE *ALLEN/HOWARD* INSTRUCTIONS TWICE TO THE JURY AND IN PROVIDING AN ADDITIONAL INSTRUCTION AS TO CIRCUMSTANTIAL EVIDENCE.

{¶ 20} In her second assignment of error, Cenexant contends that the trial court erred in providing the jury instruction commonly referred to as the *Allen* or *Howard* instruction after twice being informed by the jurors that they were unable to reach a unanimous verdict.   Appellant's Brief, p. 7-8.   According to Cenexant, the trial court's second *Howard* instruction, which was accompanied by a restatement of the circumstantial evidence jury instruction, was "unduly coercive" and "put a thumb on the scales of justice which swayed the jury to reach a verdict of conviction."   *Id.* at 9. Therefore, "the trial court violated her right to a fair trial."   *Id.*

{¶ 21} The State responds that, although defense counsel asked for a mistrial based on the jury's being deadlocked, he did not raise any objection to the instruction being given by the trial court.   Appellee's Brief, p. 5.   The State contends that Cenexant cannot establish plain error, because she cannot show that "the outcome of the trial

clearly would have been otherwise had the jury not been given the circumstantial evidence instruction a second time." *Id.* at 6. Further, the State points out that the trial court told the jury it was being sent back to deliberate one last time to see if it could reach a verdict. According to the State, this instruction made clear that the jury was not being ordered to reach a verdict, but instead the court was "merely encouraging the jury to do everything within [its] means to reach a fair verdict prior to ordering a mistrial." *Id.* Finally, the State notes that the jurors had only been deliberating for a few hours when they determined they were deadlocked, so it was not an abuse of discretion to ask them to continue to deliberate. *Id.* at 5.

{¶ 22} "The *Allen* charge or 'dynamite' charge, as it is also known, arises from *Allen v. United States*, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896)." *State v. Howard*, 42 Ohio St.3d 18, 21, 537 N.E.2d 188 (1989). In *Allen*, the United States Supreme Court had to decide whether a supplemental jury instruction given to a deadlocked jury passed constitutional muster. In *Howard*, the Ohio Supreme Court provided the following summary of the criticisms that had been raised about the original *Allen* charge since the *Allen* case was decided:

> The *Allen* charge has long been the subject of criticism from legal scholars. The brunt of this criticism is directed at the potentially coercive impact the language of the *Allen* charge can have on a jury. The criticism centers on the effect of language advising the jury that a decision must be reached, thereby depriving either the state or the defendant of the possibility of a hung jury and a mistrial. In addition, and of particular importance to

this court, is the criticism that the *Allen* charge is unduly coercive to members of the jury in the minority because it, in effect, orders those members to reevaluate their position in light of the fact that fellow jurors are unswayed, but does not require jurors in the majority to undertake a corresponding reevaluation. The effect of this charge is to place the authority of the trial judge behind the position of the majority. This, potentially, creates a force that few dissenting jurors can resist. It subtly changes the requirement that the jury verdict be unanimous to one more closely resembling majority rule.

*Howard* at 22.

{¶ 23} To address the concerns raised about the original *Allen* charge, the *Howard* Court constructed and approved the following revised, supplemental jury instruction that "uses portions of the *Allen* charge language while ratifying the principle of neutrality contained in the [American Bar Association] standard":

The principal mode, provided by our Constitution and laws, for deciding questions of fact in criminal cases, is by jury verdict. In a large proportion of cases, absolute certainty cannot be attained or expected. Although the verdict must reflect the verdict of each individual juror and not mere acquiescence in the conclusion of your fellows, each question submitted to you should be examined with proper regard and deference to the opinions of others. You should consider it desirable that the case be decided. You are selected in the same manner, and from the same source,

as any future jury would be. There is no reason to believe the case will ever be submitted to a jury more capable, impartial, or intelligent than this one. Likewise, there is no reason to believe that more or clearer evidence will be produced by either side. It is your duty to decide the case, if you can conscientiously do so. You should listen to one another's arguments with a disposition to be persuaded. Do not hesitate to reexamine your views and change your position if you are convinced it is erroneous. If there is disagreement, all jurors should reexamine their positions, given that a unanimous verdict has not been reached. Jurors for acquittal should consider whether their doubt is reasonable, considering that it is not shared by others, equally honest, who have heard the same evidence, with the same desire to arrive at the truth, and under the same oath. Likewise, jurors for conviction should ask themselves whether they might not reasonably doubt the correctness of a judgment not concurred in by all other jurors.

*Howard* at 25-26.

{¶ 24} In the instant case, the trial court was confronted with a message from the jury foreperson that the jury was deadlocked. As a result, the trial court read verbatim the supplemental instruction that was blessed by the *Howard* Court. The trial court advised the jury as follows:

THE COURT: We are back on the record. The Court has been informed that the jury is having a difficult time in reaching a verdict so we are going to bring them back in and I'm going to give them further

encouragement along that lines.

(WHEREUPON THE JURY WAS BROUGHT BACK INTO THE COURTROOM.)

THE COURT: All right. Please be seated. We are back on the record. Has a foreperson been selected? Okay. The Court has been advised that your panel is having a difficult time in reaching a unanimous verdict; is that correct?

FOREPERSON: That's correct.

THE COURT: All right. This is a delicate time during a jury's deliberations. The principle [sic] mode provided by our constitution and laws for deciding questions of fact in criminal cases is by a jury verdict. In a large portion of cases, absolute certainty cannot be obtained or expected. All though [sic] the verdict must reflect the verdict of each individual juror and not mere acquiescence in the conclusions of your fellow jurors. Each question submitted to you, I'm sorry, each question submitted to you should be examined with proper regard in deference to the opinion of others. You should consider it desirable that the case be decided.

You are selected in the same manner and from the same source is [sic] any other future jury would be. There is no reason to believe that this case will ever be submitted to a jury that's more capable, more impartial or intelligent than this one. Likewise, there is no reason to believe that more or clearer evidence will be produced by either side. It is your duty to decide

the case if you can conscientiously do so. You should listen to one another's arguments with the disposition to be persuaded. Do not hesitate to re-exam [sic] your views and change your position if you are convinced it is erroneous. If there is disagreement, all jurors should re-exam [sic] their positions given that a unanimous verdict has not been reached.

Jurors for acquittal should consider whether their doubt is reasonable considering that it is not shared by others equally honest who have heard the same evidence with the same desire to arrive at the truth and under the same oath. Likewise, jurors for convictions should ask themselves whether they might not reasonably doubt the correctness of a judgment not concurred in by all the other jurors.

With that additional instruction, I'm going to ask that you return to the jury room with an effort to obtain a verdict. Knock on the door again to summon the bailiff to indicate if and when a verdict is reached or if you are still deadlocked.

Trial Tr. 138-140.

{¶ 25} As we noted, this supplemental jury instruction is verbatim the supplemental jury instruction approved by the Ohio Supreme Court in *Howard*. Cenexant does not appear to take issue with this first supplemental jury instruction. But after the jury resumed its deliberations, the jury foreperson once again informed the trial court that it was deadlocked. This led to the following exchange between the trial judge and counsel and the following second supplemental jury instruction:

THE COURT: All right. We are back on the record. The Court has been advised that the jury has not reached a decision. I am going to, I have already read the *Howard* instruction. This is what I'm going to tell you what I plan to say to the jury.

I'm going to say, has, ask if there has been any movement. Doesn't matter what direction and if not, I'm going to say that in this day of television movies we are accustom [sic] to seeing exactly who did what in plain view. Throughout most of our history, however, jury verdicts were rendered based solely upon oral testimony. You are the sole judges of credibility of the witnesses. You determine whether the exhibits weight [sic] in favor of their credibility or against it and I'm going to read the definition circumstantial evidence that I gave them before.

Does anybody have an objection to that further instruction?

MR. DIBARTOLA: No from the State, Your Honor.

MS. MCENANEY: No, Your Honor.

MR. MCMULLEN: Not to the instruction, Your Honor. I would advise, ask at this point for a mistrial. They have indicated twice now they can't come to a verdict.

THE COURT: This is going to be the last effort and if it, if there isn't progress after this, then I'm going to have to declare a mistrial so.

All right. You can bring the jury in.

* * *

THE COURT: Please be seated. All right. We are back on the record. I'm going to ask the foreperson of the jury, have you had any progress in your negotiations?

THE FOREPERSON: No.

THE COURT: Okay. By progress I mean, and I don't want to know anything more than this, has there been any change in people's the jurors' attitude's [sic] at this point?

THE FOREPERSON: No.

THE COURT: Okay. All right. In this day of television and movies, we are accustom [sic] to seeing exactly who did what in plain view. It's become part of what we expect when we watch a show on TV. Throughout most of our history, however, jury verdicts have been rendered based solely upon testimony. You are the sole judges of credibility, the witnesses. You determine whether the exhibits weigh in favor of their credibility or against it.

With that being said, I am going to read again the instruction I gave you before as it relates to circumstantial evidence.

Circumstantial evidence is the proof of facts or circumstances by direct evidence from which you may reasonably infer other related or connected facts, which naturally and logically follow, according to the common experience of mankind. To infer, or to make an inference, is to reach a reasonable conclusion of fact that you may, but are not required to,

make from other facts that you find have been established by direct evidence. Now whether an inference is made rests entirely with you.

I already gave you in the previous charge the instruction that no other jury would be presumed to be any more capable then [sic] you in resolving this case.

It's not [sic] a quarter to six. I'm going to send you back into the jury room. I know that might be frustrating but with the instruction that I just gave, I would like for each of you to reconsider your position in light of the testimony that we've heard in the courtroom today, and if you can honestly and fairly reconsider your position, the decision is yours as you assess the credibility, but this charge is given to you. So I'm going to ask you one last time to go back and see if you can reach a verdict.

Trial Tr. 140-143.

**{¶ 26}** The trial court did not issue the full *Howard* instruction a second time. Rather, the trial court simply reminded the jury that no other jury would be presumed to be any more capable than this jury in resolving the case. Then the trial court read again for the jury the standard jury instruction on circumstantial evidence.

**{¶ 27}** When reviewing the trial court's supplemental jury instruction, we must consider whether a trial court deviated from the language approved in *Howard*. "If a court deviates from the *Howard* language, the court must ensure that the charge satisfies the concerns of the *Howard* opinion. In particular, a court must ensure that the instruction (1) encourages a unanimous verdict only when one can conscientiously be reached,

leaving open the possibility of a hung jury and resulting mistrial; and (2) calls for all jurors to reevaluate their opinions, not just the minority members." (Citations omitted.) *State v. Clifton*, 172 Ohio App.3d 86, 2007-Ohio-3392, 872 N.E.2d 1310, ¶ 31 (4th Dist.). Cenexant contends that the second supplemental jury instruction "which added the restatement of the circumstantial evidence instruction * * * went so far as to be unduly coercive and to put a thumb on the scales of justice which swayed the jury to reach a verdict of conviction." Appellant's Brief, p. 9. We do not agree.

**{¶ 28}** The trial court stated the *Howard* charge verbatim after the jury was deadlocked the first time. When the jury was deadlocked the second time, the trial court explained that it was going to deliberate one more time and reminded the jury of the charge on circumstantial evidence. In doing so, the trial court was careful to call on all jurors to reevaluate their opinions and made it clear that this was the last time the court would ask them to attempt to reach a verdict. Although duplicative, the second supplemental jury instruction cannot be construed as coercive or erroneous, let alone plain error. *State v. Stephenson*, 4th Dist. Adams No. 12CA936, 2013-Ohio-771, ¶ 16.

**{¶ 29}** The second assignment of error is overruled.

IV.    Conclusion

**{¶ 30}** Having overruled both assignments of error, the judgment of the trial court will be affirmed.

. . . . . . . . . . . .

WELBAUM, P.J. and HUFFMAN, J., concur.