[Cite as *State v. Miller*, 2024-Ohio-2217.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## GEAUGA COUNTY

STATE OF OHIO,

        Plaintiff-Appellee,

- vs -

JEREMY MILLER,

        Defendant-Appellant.

CASE NO. 2023-G-0038

Criminal Appeal from the
Chardon Municipal Court

Trial Court No. 2023 TRC 00759

# O P I N I O N

Decided:  June 10, 2024
Judgment:  Affirmed

*Dennis M. Coyne*, Middlefield Police Prosecutor, 210 Fox Lane, Chagrin Falls, OH 44022 (For Plaintiff-Appellee).

*R. Robert Umholtz*, Geauga County Public Defender, *Paul J. Mooney*, Chief Assistant Public Defender, 211 Main Street, Chardon, OH 44024 (For Defendant-Appellant).

EUGENE A. LUCCI, P.J.

{¶1}    Appellant, Jeremy Miller, appeals the judgment of the Chardon Municipal Court, finding him guilty of operating a vehicle under the influence ("OVI"), after entering a plea of no contest.  At issue is whether a horse-driven buggy is a vehicle, as a matter of law, under R.C. 4511.19, Ohio's OVI statute.  We answer the question in the affirmative and affirm the trial court's judgment.

{¶2}    In the early-morning hours of February 25, 2023, an officer from the Middlefield Police Department was alerted to an Amish horse and buggy which was traveling on North State Avenue in Middlefield, Geauga County, Ohio.  A concerned

motorist alerted police to the buggy because it was weaving on the road, repeatedly going left of the center line. Upon locating the buggy, the officer activated his emergency lights and siren. The officer used numerous different siren commands, but the buggy failed to stop. The officer observed the buggy continue to cross the double-yellow center line.

{¶3} The officer drove next to the buggy and observed the operator, appellant, slumped over and unconscious. Eventually, with the assistance of civilians, the officer was able to stop the buggy. Appellant was awakened and appeared intoxicated. He admitted to drinking four "Twisted Teas," an empty box of which was located in the buggy. Field sobriety tests were initiated, and appellant was arrested and charged with OVI.

{¶4} Appellant entered a "not guilty" plea, and defense counsel filed a motion to suppress and/or dismiss, claiming that the buggy is not a "vehicle" under Ohio's OVI statute. The matter came for hearing where defense counsel and the prosecutor stipulated to the facts set forth in the police report. No witnesses were sworn, but counsel for each side made legal arguments in favor of their respective positions. The trial court denied appellant's motion.

{¶5} Appellant entered a plea of no contest. He was found guilty and sentenced to five days in the Geauga County Safety Center to be followed by 18 days of electronic monitored house arrest. Appellant was also fined and placed on probation for two years. This court granted appellant's motion to stay the sentence pending appeal.

{¶6} Appellant assigns the following as error:

{¶7} "The trial court erred in denying defendant-appellant's motion to suppress and/or dismiss."

Case No. 2023-G-0038

{¶8} Appellant contends that an Amish, horse-drawn buggy does not meet the definition of a vehicle for purposes of Ohio's OVI statute. Both the state and appellant appear to recognize that this issue is one of first impression. For the reasons that follow, we conclude the plain language of the Ohio Revised Code demonstrates that the General Assembly contemplated horse-drawn buggies to be included in the definition of a "vehicle" under Ohio's OVI statute. As appellant's argument presents an issue of law, this court reviews the trial court's judgment de novo. *See, e.g., State v. Nohra*, 11th Dist. Trumbull No. 2021-T-0062, 2022-Ohio-3115, ¶ 20.

{¶9} Appellant was charged with violating R.C. 4511.19(A)(1)(a) and (b), which provide:

> (A)(1) No person shall operate any vehicle, streetcar, or trackless trolley within this state, if, at the time of the operation, any of the following apply:
>
> (a) The person is under the influence of alcohol, a drug of abuse, or a combination of them.
>
> (b) The person has a concentration of eight-hundredths of one per cent or more but less than seventeen-hundredths of one per cent by weight per unit volume of alcohol in the person's whole blood.

{¶10} As noted above, appellant does not take issue with the fact that he was under the influence of alcohol and/or had a prohibited concentration of alcohol in his blood. Instead, he narrowly asserts the Amish buggy is not a statutorily defined vehicle for purposes of R.C. 4511.19.

{¶11} A "vehicle," for purposes of R.C. 4511.19, is defined under R.C. 4511.01(A), which provides:

> "Vehicle" means every device, including a motorized bicycle and an electric bicycle, in, upon, or by which any person or

3

property may be transported or drawn upon a highway, except that "vehicle" does not include any motorized wheelchair, any electric personal assistive mobility device, any low-speed micromobility device, any personal delivery device as defined in section 4511.513 of the Revised Code, any device that is moved by power collected from overhead electric trolley wires or that is used exclusively upon stationary rails or tracks, or any device, other than a bicycle, that is moved by human power.

{¶12} Pursuant to R.C. 4511.01(BB), "'[s]treet' or 'highway' means the entire width between the boundary lines of every way open to the use of the public as a thoroughfare for purposes of vehicular travel."

{¶13} R.C. 4511.10(HHH) defines "operate" as "to cause or have caused movement of a vehicle, streetcar, or trackless trolley."

{¶14} Neither "device" nor "drawn" is defined by the Code. We shall therefore apply the common meaning of these terms. "Device" means "a piece of equipment or a mechanism designed to serve a special purpose or perform a special function." Merriam-Webster, https://www.merriam-webser.com/dictionary/device, (accessed March 29, 2024). "Drawn" is defined as "to cause to follow by applying force on." *Id.*

{¶15} An Amish buggy is a piece of equipment designed for transportation utilizing horses to "draw" the "device." While it is designed to transport people or equipment in various contexts, a principal purpose or a significant purpose is such transportation on the highways of this state. We therefore conclude that, pursuant to R.C. 4511.01(A), an Amish buggy, or any horse-drawn buggy, is a "vehicle" subject to Ohio's OVI statute, codified under R.C. 4511.19, and appellant was operating the same on a highway in violation of R.C. 4511.19(A)(1)(a) and (b). This conclusion is strongly supported by the policies animating Ohio's OVI statute.

4

{¶16} In *Mentor v. Giordano*, 9 Ohio St.2d 140, 224 N.E.2d 343 (1967), paragraph five of the syllabus, the Supreme Court of Ohio held that "[t]he primary purpose of statutes and ordinances making it an offense to operate a motor vehicle while under the influence of intoxicating liquor is to protect the users of streets and highways from the hazard of vehicles under the management of persons who have consumed alcoholic beverages to such an extent as to appreciably impair their faculties." Although *Giordano* specifically addresses "motor vehicles," which are separately defined under R.C. 4511.01(B), the term may be logically viewed, for purposes of this discussion, as "species" of the "genus" "vehicle." Further, in the body of the *Giordano* opinion, the Supreme Court broadened the scope of the policy discussion to envelop merely "vehicles." *See id.* at 145 ("Of course, the primary object of statutes and ordinances making 'drunk driving' an offense is to protect the users of streets and highways from the hazard of *vehicles* under the management of persons who have consumed alcoholic beverages to such an extent as to appreciably impair their faculties.") (Emphasis added.).

{¶17} Further, in holding that R.C. 4511.19 imposes strict liability, the First Appellate District determined that "the overall design of the statute is to protect against the hazards to life, limb and property created by drivers who have consumed so much alcohol that their faculties are impaired." *State v. Grimsley*, 3 Ohio App.3d 265, 267, 444 N.E.2d 1071 (1stDist.1982), citing *Giordano*. In drawing this conclusion, the court in *Grimsley* held that "[t]he act of driving a vehicle while under the influence of alcohol (or drugs, or a combination of both) is a voluntary act in the eyes of the law, and duty to refrain from doing so is one that in the interests of public safety must be enforced by strict criminal liability * * *." *Id.* at 268. The First District also noted

5

"[i]t is a widely accepted fact that a major portion of the 40,000 to 50,000 traffic deaths each year are caused by drivers who have been drinking." *Grimsley* at 267, fn. 5.

{¶18} Finally, the Supreme Court of Ohio, in *State v. Gill*, 70 Ohio St.3d 150, 637 N.E.2d 897 (1994) (superseded by statute on other grounds), stated that "[t]he gravity of the problem of driving while intoxicated is revealed by the number of needless tragic injuries and deaths that occur on the roadways in this state." *Id.* at 154; *see also State v. Clifton*, 172 Ohio App.3d 86, 2007-Ohio-3392, 872 N.E.2d 1310, ¶ 24 (4th Dist.) (concluding, in the context of a prosecutor's closing argument, that "[i]n light of the recognized public safety purposes behind the statute governing driving while under the influence of alcohol or drugs, we find no error in the prosecutor's inclusion of statements regarding public safety and references to tragedies occurring in connection with drunk driving.")

{¶19} A horse-drawn buggy, operated unsafely or while a person is under the influence, invokes the same public-policy safety concerns discussed in the above cases. And the facts of the instant case instantiate how such a device can create similar hazards to life and limb as that of a motor vehicle. Specifically, while appellant was unconscious due, at least in part, to his intoxication, the horses were left to wander on their own on the highway weaving frequently over the double-yellow lines on the roadway. Horses are large, powerful, and heavy animals. If a motorist were to accidentally strike the horse-drawn buggy, not only could the animals and occupant of the buggy be significantly, if not mortally injured, so could others who share the roadway with the buggy.

6

{¶20} In light of the foregoing considerations, we conclude, as a matter of law, that a horse-drawn buggy is a "vehicle" for purposes of Ohio's OVI statutory scheme. Appellant was therefore properly cited and convicted following his plea of no contest.

{¶21} Appellant's assignment of error lacks merit, and the trial court's judgment is affirmed.

MATT LYNCH, J.,

ROBERT J. PATTON, J.,

concur.

7